GEORGE C. CLOSE, REVIVED IN THE NAME OF CARRIE ROCK-WELL, APPELLANT, V. SURN SWANSON ET AL., APPELLEES.

FILED APRIL 2, 1902.    No. 10,154.

Commissioner's opinion, Department No. 1.

1. **Highway**: ORDER OF COUNTY BOARD: DEDICATION: USER. Where no order has been made by a county board laying out or establishing a traveled road, the public has no rights in such road as against a landowner in adverse possession, except such as are acquired by dedication and user. *Lydick v. State*, 61 Nebr., 309, distinguished.

2. ————: DEDICATION. To constitute a valid dedication of private property for a public highway, it must clearly appear that the owner intended to dedicate the land for a highway, and that the public by user or otherwise accepted the land for that purpose.

3. **Evidence**: FINDINGS. Evidence examined, and *held* not to sustain findings and decree of trial court.

APPEAL from the district court for Burt county. Heard below before FAWCETT, J. *Reversed.*

*H. E. Carter,* for appellant.

*Willis G. Sears* and *H. H. Bowes, contra.*

KIRKPATRICK, C.

This is a suit brought by George C. Close, appellant, as the owner of the east half of the northeast quarter of section 1, township 21 north, range 10 east, in Burt county, against Surn Swanson, road overseer of district No. 12, and against Horace Brookings, road overseer of road district No. 27, both of Burt county, appellees. Separate petitions were filed against the appellees, but by consent of

all parties, an order of consolidation was made, and the two cases tried as one. The petitions are identical, and plead that appellant purchased the land in question in 1867, and soon thereafter moved upon it, and that he has resided thereon ever since; that he has valuable buildings and improvements on the land, and that he has, at great expense and labor, set out a valuable grove and hedge and ornamental trees, along the north line of his land; that he has the land inclosed by a substantial fence, placed immediately north of his grove, etc.; that immediately north of his fence there is a traveled road, which has been used by the public for such purpose for more than ten years; that said road was never laid out or established; that all rights of the public therein have been obtained solely by user; that the centre line of said road is the line dividing road district No. 27, lying on the south, of which Horace Brookings is the road overseer, and that portion of the road lying north of the centre line which is road district No. 12, of which Surn Swanson is the road overseer; that appellees, Swanson and Brookings, threaten and intend to cut down appellant's hedge, and tear down and remove his fence, and cut down his grove and ornamental trees, all within a strip of land about two rods in width within the line of his fence on the north of his premises; concluding with a prayer for a permanent injunction. The answer of the appellees admitted their official capacity, and alleged that the road was duly laid out and established, and that the fence and trees of appellant Close obstructed the public road; that he had been notified to remove his fence and cut down the hedge and timber, but that he had failed and refused to do so; concluding with a prayer that a decree be entered decreeing the existence of a sufficient, proper and legal public road over said premises, and that defendants, as road overseers, have the right to exercise lawful authority with relation thereto, and that the temporary injunction theretofore granted be dissolved, and for costs. To these answers a general denial was filed by appellant, and a trial was had, which resulted

in a judgment dismissing appellant's petitions at his cost, and vacating the temporary injunction theretofore granted. From this judgment the case is brought to this court by appeal.

A great amount of evidence was taken in the case, in which there appears little, if any, dispute, and the matters following may be said to be established beyond question. In 1867 appellant purchased the land in controversy, and in about a year thereafter established his residence thereon. At that time many of the corner stones and monuments placed by the government surveyors were in a good state of preservation. The quarter corner on the north side of section 1 was marked by a stone no doubt selected and marked by the government surveyors. The government corner at the northeast of section 1 was plain, and never has been questioned. There seems to be no question that the quarter corner on the north side of section 1 stood three or four rods north of a true east and west line. But however that may be, it is claimed by appellant as the true corner, is the only one claimed ever to have been found, and was recognized by the landowners on both sides of the line, as well as the general public, for twenty-five or thirty years, and up until the commencement of this controversy. In 1876 a petition was presented to the county board, asking for the establishment of a public road along this section line. It was signed by appellant, among others, and the road appears to have been viewed or surveyed. These were preliminary steps to be taken to authorize the county board to act, and for its information, that it might properly and understandingly act. No other steps were ever taken, and no order was made or attempted by the board laying out or establishing the road in question.

In the case of *Lydick v. State*, 61 Nebr., 309, this court said: "Where a public road has been established by proceedings under the statute, and opened and traveled by the public for more than ten years, the public thereby acquires an easement therein; and the court will not examine

the original proceedings for the laying out of the road, and determine whether or not they were .valid." Of the correctness of the rule established by that case, and the decisions cited in support thereof, we have no doubt; but in the case at bar the county board stopped short of making any order concerning, laying out, or establishing the road in question. Hence the road involved in this controversy does not come within the rule announced in that case. If an order, however irregular, had been made by the county board, laying out or establishing the road in controversy, the rule in *Lydick v. State, supra,* would govern. At the time the petition for the road was signed, appellant gave two rods of his land along the north line for road purposes, and removed his fence, which he then had on a portion of his north line, south thirty-three feet from the line claimed by him to mark his north boundary, to the place where it now stands. He plowed a furrow east and west along the line where his fence now stands, planted a hedge in the furrow, and built a fence, which he has maintained ever since. It was some little time before he completed this fence up to his northwest corner, and during a portion of the time the fence has been allowed to remain down and out of repair. But at no time from the year 1876 until the commencement of this suit did appellant permit any public travel south of the line of his fence and hedge. Long before the attempted establishment of the road mentioned, appellant had his north line surveyed by the county surveyor, who recognized the marked stone on the north side of section 1 as the true corner, and placed a stone for appellant's northwest corner on a true line between the quarter corner on the north side of section 1 and the northeast corner of that section; and this corner, so placed by the county surveyor, has always been maintained by appellant.

It is disclosed by the testimony that the parties owning the land north of the section line have during late years, as they from time to time repaired and rebuilt their fence, gradually moved it south near the quarter corner on the

north side of section 1, encroaching upon the traveled road, until at the commencement of this suit their fence was nearly three rods south of the point where the marked stone corner was located, thus nearly closing up the traveled road; and back of this case seems to lie the desire of appellees, as road overseers, and of the public, to straighten this piece of roadway, and to cut down appellant's fence, trees and hedge, in order to effectuate that purpose.

All of the above matters being clearly established by the evidence, the case seems to resolve itself into a question purely of law. The only right the public has in the use of the road extending along the north line of appellant's land is that obtained by dedication, the proceedings had for the purpose of laying out the road being wholly insufficient to confer any right upon the public to the use of the land as a highway. A fair definition of what constitutes dedication is found in 1 Bouvier, Law Dictionary [15th ed.], 492, as follows: "An appropriation of land to some public use, made by the owner, and accepted for such use by or on behalf of the public. Express dedication is made by deed. Implied dedication is presumed from an acquiescence in the public use. Without acceptance a dedication is incomplete." The rule seems to be abundantly supported by authority in this and other states that the owner of land must have an intention to dedicate, coupled with an actual abandonment of the use of the property exclusively to the public. The owner of the land must set it apart to the extent that he intends it to be appropriated; it must be given over to the public use. And the rule is equally well settled and sustained by authority that such dedication must be accepted by the public. In the case of *Brown v. Stein*, 38 Nebr., 596, this court said: "In order to establish the existence of a public highway over private property by dedication the *animus dedicandi* is essential and must be clearly proved." And again, in the case of *City of Omaha v. Hauver*, 49 Nebr., 1, it is said: "Where the acts of an owner of real estate are

relied upon to prove that he has dedicated it to the public, the acts must be such as to clearly manifest an intention on his part to dedicate it; and the public must have so acted with reference to the property as to indicate an intention of acceptance of the property dedicated. Acts of an owner which amount to a dedication of his property to the public must be such as indicate an abandonment of the use of the property exclusively to the public." The following cases, among a great list of authorities cited, support the rule announced in this state: *Johnson v. City of Burlington*, 95 Ia., 197, 63 N. W. Rep., 694; *Brooks v. City of Topeka*, 8 Pac. Rep. [Kan.], 392; *Eastland v. Fogo*, 27 N. W. Rep. [Wis.], 159; *Bell v. City of Burlington*, 27 N. W. Rep. [Ia.], 245; *City of Alton v. Meeuwenberg*, 66 N. W. Rep. [Mich.], 571.

In the case at bar, as we have seen, the undisputed evidence discloses that for more than twenty-five years appellant has occupied the land in controversy continuously, and has always had it enclosed within the fence now maintained by him; and during all this period it is equally clear that the public has used as a road only that portion of appellant's land north of his present line of fence and hedge. It follows, therefore, that the judgment of the trial court is wholly unsupported by the evidence.

It is recommended that the judgment of the trial court be reversed, and a decree entered herein that a perpetual injunction be granted as prayed for in appellant's petition.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and a decree will be entered in this court, granting a perpetual injunction as prayed for.

JUDGMENT ACCORDINGLY.

NOTE.—Highway—Dedication—United States Homestead—Fencing Land Leaving Strip Along Section Line. *Rube v. Sullivan*, 23 Nebr., 779.—REPORTER.