Lee v. Eyerly.

HENRY LEE, APPELLANT, V. FORD EYERLY ET AL., APPELLEES.

FILED DECEMBER 30, 1922. No. 22164.

Highways: ESTABLISHMENT: EASEMENT. Where a public road has been attempted to be established by proceedings under the statute and opened and traveled by the public for more than ten years, the public thereby acquires an easement therein, and the court will not examine the original proceedings for the laying out of the road and determine whether or not they were valid. *City of Beatrice v. Black*, 28 Neb. 263, and *Lydick v. State*, 61 Neb. 309, followed and approved.

APPEAL from the district court for Valley county: BAYARD H. PAINE and EDWIN P. CLEMENTS, JUDGES. Affirmed.

*Davis & Davis,* for appellant.

*Munn & Norman* and *Bert M. Hardenbrook, contra.*

Heard before MORRISSEY, C. J., FLANSBURG, ALDRICH and DAY, JJ., REDICK, District Judge.

REDICK, District Judge.

This is an action to enjoin the road overseer and board of supervisors of road district No. 15 in Valley county from destroying gates and fences which the plaintiff had erected across a traveled road of said county, on the ground that said road had never been legally established as a public highway. The plaintiff, just prior to the commencement of the suit, had obstructed the road, and the defendants had torn them down, and this had occurred several times, resulting in the suit for the purpose of determining the rights of the parties, the plaintiff claiming that the *locus in quo* had never been legally laid out and established as a public highway, and the defendants that it had been so laid out and that it had been used by the public generally for a period of ten years after the county commissioners had taken steps under the statute to establish it as a highway. The case was tried before two judges in the district court, resulting in a denial of the injunction and a finding and decree for the defendants, and plaintiff appeals.

The facts as established by the evidence are substantially as follows: The road in question had been traveled more or less by the public from 1884 until August, 1887, when a petition was filed with the board of county commissioners to open and establish the same as a public highway, and pursuant to such petition a commissoner was appointed, under the statute, for the purpose of viewing the road and determining its necessity, who filed his report in affirmation October 15, 1887, that he had caused the road to be surveyed and presented a report of such survey and the field notes and plat thereof, and on January 16, 1888, the matter of the petition was considered by the board and the petition granted as prayed for, with the notation on the record of "no objections or claims for damages filed." The road continued to be traveled by the public generally from that time forward to the present with no substantial interruptions, although it appears from the evidence that obstructions

were placed across the road in the form of gates at the
north and south line of plaintiff's land in 1912, but the
same were left open except at times during the winter
when they were closed for the purpose of confining stock,
but these obstructions did not seriously interfere with
the public travel until shortly before the commencement
of this action, when it was sought by plaintiff to perma-
nently close the road. The road did not follow a straight
line, but angled off in an irregular course conforming to
the topography of the country, its northern terminus be-
ing a mile west of its beginning, being about three and
one-half miles long. It pursued a rather irregular course
through the northwest quarter of section 13, the land of
the plaintiff, which he purchased about 1906. The major
portion of the road passed through a rough country and
along the course of what is referred to as a valley or
cañon; the sides of the cañon in many places were quite
precipitous and characterized by one witness as consist-
ing of "cat steps." The ground on either side of the
road had not been cultivated to any extent until about
1902, although it appears that furrows had been plowed
along the road on the top of the bank of the cañon prior
to 1900, and at that time fences were built on the south
of plaintiff's land up to the east side of the road, but were
not continued to the west until about 1912. The land to
the east of the road is good farming land, while that to
the west is somewhat hilly and broken; some of the land
on either side of the road had been taken up and culti-
vated at an early date, but the evidence does not estab-
lish that it was cultivated up to the line of the road or
with any reference thereto; neither is it shown that any
portion of the territory occupied by the road has ever
been cultivated or plowed, except by the public authori-
ties who did some work upon the road as early as 1890,
and the adjoining farmers worked out their poll tax on
this road. Whether or not the territory through which
the road passed would come within the classification of
"wild land" or "cultivated land" is a close question,

which we do not deem it necessary to decide. Plaintiff,. Mr. Lee, in answer to the question, "You knew they were traveling through there?" testified, "I thought there was a road there until we was told there wasn't any road there"—the opinion having been imparted by an attorney who probably based his judgment upon defects in the proceedings of 1887 for the establishment of a road.

We think the evidence establishes two propositions: First, that in 1887 the proper county authorities attempted to lay out and establish the road in question as a public highway; and, second, that the road was established, substantially along the course of the survey, and has been opened and traveled by the general public continuously for a period of ten years and up to the present time.

If the case of *Lydick v. State,* 61 Neb. 309, is the law in this jurisdiction, it rules this case. The first syllabus is as follows:

"Where a public road has been established by proceedings under the statute and opened and traveled by the public for more than ten years, the public thereby acquires an easement therein, and the court will not examine the original proceedings for the laying out of the road and determine whether or not they were valid."

That case followed *City of Beatrice v. Black,* 28 Neb. 263, and has been cited with approval in *Close v. Swanson,* 64 Neb. 389, and *Kime v. Cass County,* 71 Neb. 677. In *Close v. Swanson, supra,* the court distinguished the *Lydick* case, citing the syllabus above quoted, and said:

"Of the correctness of the rule established by that case, and the decisions cited in support thereof, we have no doubt; but in the case at bar the county board stopped short of making any order concerning, laying out, or establishing the road in question. Hence the road involved in this controversy does not come within the rule announced in that case. If an order, however irregular, had been made by the county board, laying out

or establishing the road in controversy, the rule in *Lydick v. State* would govern."

The proceedings of the commissioners stopped with the survey, and the plaintiff built his fence in accordance with the survey, and the public travel was along the line of the survey, and it was sought by the commissioners to open the road across the plaintiff's land some two rods south of the line of the road as surveyed, on a claim that a quarter section corner used as the basis of the survey and long established as a government monument was incorrect.

In *Kime v. Cass County, supra,* the court said (page 678) : "We do not find in the record any order of the board establishing the road as recommended by the commissioner, but the road appears to have been opened some time in the year 1872 and used more or less from that date down to 1879 or 1880." And on page 679 : "The district court found that no damages were awarded to Kime for the land taken for this road, and we think the evidence amply sustains that finding. There is no record of the appointment of any appraisers to assess the damages, and no record of damages having been paid. In fact, no evidence of any kind appears relating to the appraisement or payment of damages. If this road had been opened and used by the public as a highway for ten years or more, then the regularity and validity of the proceedings in establishing the same would not be examined. (Citing the *Lydick* case.) The public, however, ceased to use the premises as a road not later than 1879, and from that time up to April, 1900, the owner of the land has been in exclusive possession."

It therefore appears that the county was defeated in that case for the reason that the public had only used the road for about seven years, and, the proceedings of the commissioner being legally insufficient, no highway was established. It seems clear from these cases that the existence of a highway may be established in two ways: First, by showing a strict compliance with the

statutes providing for the establishment of public roads; and, second, by imperfect proceedings under those statutes followed by an opening of road and continued public use thereof as a highway for ten years following said proceedings. Other ways, of course, exist, such as adverse possession for the statutory period, which in the case of wild prairie land must be with the knowledge of the owner, or dedication. The principles governing the solution of the question as applied to the three methods are somewhat different; as to the first, the only question is the legality of the proceedings; as to the second, the only question is the continued user by the public for ten years; and, as to the third, the public authorities must bring themselves within the principles governing title by adverse possession as between private owners. While it is said in *Peterson v. Fisher,* 71 Neb. 238: "It may be that the defective proceedings may be considered by the court as defining the extent of the prescriptive right claimed, but not as a basis of the same"—we do not think that the learned justice by that language intended to suggest that the proceedings by reason of their defects had no relation to the nature of the subsequent public use, and that, therefore, in every such case, the public was required to bring its case within the principles governing a contest between individuals. After the decisions in the four cases above cited, two of which resulted in victories for the public and two for the landowners, and in 1909, the legislature passed an act (Laws 1909, ch. 113) which was amended in 1917:

"All roads within this state which have been laid out in pursuance of any law in this state, and which have not been vacated in pursuance of law, and all roads located and opened by the county board of any county and traveled for more than ten years, are hereby declared to be 'public roads,' and no such road or any part thereof shall be vacated or changed without the consent of the majority of the voters living within two miles of

the road and not living in a village or city." Laws 1917, ch. 58.

This statute would seem to have been enacted in view of the many existing disputes over the existence of public roads, and to have classified them as above suggested, first, roads laid out in strict pursuance of law, and, second, roads located and opened by the county commissioners and traveled for more than ten years, and constitutes a legislative recognition of the correctness of the principles laid down in the *Lydick* and *Black* cases. But plaintiff relies most strenuously upon the case of *Peterson v. Fisher, supra,* and contends that the *Lydick* case is thereby disapproved. To this we are unable to agree. The case of *City of Beatrice v. Black, supra,* which was followed in the *Lydick* case, was cited and distinguished, but not disapproved, in the *Peterson* case, and the court said:

"The question in this (*Peterson*) case is, whether the presumption arising from the long lapse of time since the attempted proceedings to lay out a highway, a portion of which is in dispute, is conclusive against the owner of premises over which the public has only occasionally traveled a portion of the disputed highway." And at page 241 the court said: "The evidence in this case shows that, while both east and west of the line between sections 11 and 14 the road was freely traveled by the public, yet it further shows that the main line * * * was diverted to the north, thence westward across section 11, thence southward after having passed over said section to a continuation of the original line running east and west. The plaintiff testifies that he had a gate at the east line of said section, and that a few persons came through the gate, passed along between the sections, thence southward to his house, but there is no evidence that any public work was ever done upon, or that the public in general ever traveled on, the line between sections 11 and 14, and there is no evidence of travel between these sections for as long a period as ten years.

This being the case, no prescriptive right was acquired by the public as against the owners of the land in said sections, and, since the plaintiff in this case never recognized any right of the public to pass over his premises, it is apparent that, unless the original proceedings were valid, no public highway exists over the land of the plaintiff at the place in dispute"—citing three Nebraska cases.

It will thus be seen that no public user of the highway was shown in pursuance of the defective proceedings. Our attention has not been called to any case where a good faith attempt has been made to establish a highway by the county commissioners and followed by continued use by the public as a highway for a period of ten years, in which it is held that the highway was not established, and we have been able to find none. The existence of the highway has been denied only in cases where it was shown that no proceedings whatever had been taken and a failure to show adverse possession, or where defective proceedings were shown and a failure to show public user for ten years; whereas, as in this case, proceedings, though defective, were taken and followed by use by the public generally for a period of ten years, the existence of the road has been uniformly declared. We conclude that the judgment of the district court is right, and the same is

AFFIRMED.