HOSEA CARPENTER, APPELLANT, V. MATTHEW SCHNERLE ET AL., APPELLEES.

FILED SEPTEMBER 28, 1912. No. 16,620.

1. **Highways:** ESTABLISHMENT BY PRESCRIPTION. Slight deviations from the line of public travel to avoid mud, pools, or natural obstructions will not necessarily prevent the establishment of a highway by prescription, especially so when it appears that the natural obstructions have been removed and that the roadway has been used without interruption or substantial change for more than ten years.

2. ———: DEDICATION. Where a landowner notifies the public to cease traveling a road across his lands, and in lieu thereof to travel over the section-line road along the edge of his land, and he and his grantees, subsequently, for a period of ten years, permit the public without interruption to travel along said section line over a strip of land less than two rods in width, such acts will be construed to constitute a dedication of such strip of land as a public road.

3. ———: ———: ACCEPTANCE. In order to constitute a highway by dedication, it is not necessary that the offer of dedication be accepted by the public authorities. It may be accepted by the public itself, and the acceptance by the public itself is shown by its entering upon the land and enjoying the privilege offered, by user.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Reversed with directions.*

*W. C. Dorsey,* for appellant.

*George J. Marshall, contra.*

FAWCETT, J.

The controverted fact in this case is the existence of a public road running south three-fourths of a mile from the northwest corner of the northwest quarter of section 27, township 2, range 16, in Franklin county, the entire roadway being east of the line between sections 27 and 28, on lands of defendants. Defendants attempted to close the road by building fences across it in May, 1909, and plaintiff brought this suit to enjoin and prevent them from doing so, claiming the right to use it for public travel. Previously, plaintiff had at will entered the road from the north and had also approached it from the southeast by crossing diagonally the southwest corner of section 27. The litigation is between private individuals, neither the county nor any officer thereof being a party to the suit. The trial court found that there was a legally established highway over the west side of the northwest quarter of section 27, east of the section line, but that there was no public road across the west end of the 80-acre tract south of it. The result is that plaintiff, in going to and from his home, and the public generally, will be prevented from crossing the land of defendant Matthew Schnerle, and the other defendant will be required to keep open on his land half a mile of roadway in the form of a *cul-de-sac.* Plaintiff has appealed, and defendants have taken a cross-appeal.

Plaintiff argues that a public highway for the entire three-fourths of a mile in controversy was clearly shown by the evidence, within the meaning of the following rule: "To establish a highway by prescription there must be a

user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land." *Bleck v. Keller*, 73 Neb. 826; *Engle v. Hunt*, 50 Neb. 358. Whether a highway three-fourths of a mile long at the place described was acquired by either dedication or adverse user is the controlling question in the case. The claim of the public was shown by a witness who testified without objection that, about 12 years before the trial, the county surveyor surveyed the road; that it was laid out by the county; that damages were allowed, but never paid; that he lived on land west of the road and was notified to move his fence back; that the witness, under written notice from a supervisor, had done work on the road; that he "worked some there most every year;" that his son had also worked on the road, and that a man by the name of Davis "plowed the hills down about 12 years ago." While the county board's orders in regard to this road appear to have been introduced in evidence, they are not in the bill of exceptions. Evidently the parties consider them immaterial in determining the issues tried. A number of witnesses testified that the road, without substantial change, had been open to, and used by, the public generally, continuously, for 12 years or more before defendants attempted to close it; that the travel had never been interrupted; and that continuous use had worn tracks in the sod. It was shown that the roadway left open by those who cultivated the lands in controversy varied in width, but there is positive testimony that a space sufficient for the passage of wagons, buggies and stock was always used for that purpose. It appears that, for a time, heavy loads were, for a short distance, diverted at one place by a hill, but that there was continuous travel close to the section line during the entire length of the strip of land in question for more than 10 years. It is shown without contradiction that one Blackburn, who from 1896 to 1900

owned the quarter section of land, along which the north half mile of the road runs, notified the public, who were traveling over a road that ran through the middle of his quarter from north to south, to cease traveling over that road and to use the section line road; clearly showing a recognition and dedication of the north half mile of the road in controversy, on his part. It is. also shown without contradiction that one Davis, who owned the south eighty, now owned by defendant Matthew Schnerle, as early as 1897, worked the hill on the road contended for, in front of his eighty, so as to make the hill more passable for vehicles of all kinds traveling along the road; thus showing a recognition and dedication by him of the other quarter of a mile of the road in controversy. The evidence is uncontradicted that, not only prior to the foregoing acts by Blackburn and Davis, but at all times subsequent thereto, until the defendants went into possession of the lands in 1907, the road had been open to the public and traveled by the people passing along there, at will. A dedication of land for a public road along a section line will be inferred upon much weaker testimony than would be required to establish such a dedication of a road running through a tract of land. In this case we think the evidence is ample to establish both a dedication, and user for the statutory period, of the road in controversy.

The judgment of the district court is therefore reversed and the cause remanded, with directions to that court to grant a perpetual injunction against both defendants as prayed in plaintiff's petition.

REVERSED.

LETTON, J., not sitting.

SEDGWICK, J., dissenting.

It is said in the opinion that the controversy involves a road running three-fourths of a mile south from the north side of the section, and that the trial court ordered it opened for one-half mile along the section line, and the result of the judgment of the trial court was to keep open

a half mile of the roadway "in the form of a *cul-de-sac.*" The opinion extends this *cul-de-sac* one-fourth of a mile farther, so that now the public generally can drive down from the north side of the section three-fourths of the way across the section, and, if they desire, can turn and drive back. It is said in the opinion that the plaintiff has heretofore entered this three-fourths of a mile road from the north and has "approached it from the southeast by crossing diagonally the southwest corner of section 27." There is no attempt made in the opinion to show any right to cross this southwest quarter of section 27, but I understand from the record that there is no substantial claim by either party that there has ever been a road across the southwest forty of section 27, either by general user or by grant, and that there is no way that the proposed road three-fourths of a mile long can be made available. I do not think that the law will allow the creation of such a *cul-de-sac*, as it is named in the opinion, by prescription, and therefore the conclusion reached is not warranted by the record.