CLARENCE W. HANSEN, Appellee, *vs.* CHARLES H. GREEN
*et al.* Appellants.

*Opinion filed October 24, 1916.*

1. HIGHWAYS—*what use of a road is sufficient to establish public right of way.* Where there is a regularly traveled, unobstructed road across a tract of land, used by the public generally for more than twenty years without permission of anyone, such use is sufficient to establish a right of way by prescription, and it is not necessary that anyone make public proclamation of the claim of right to use the road.

2. SAME—*what proof is necessary to establish a dedication to public use.* Satisfactory proof either of an actual intention to dedicate or such acts and declarations as equitably estop the owner from denying such intention is required where land is claimed to have been dedicated to public use, and no satisfactory inference can be drawn of an intention to dedicate lands to public use where they are lying unenclosed.

3. SAME—*use of way by prescription must be established under a claim of right and along a definite line.* Where a right of way is claimed by prescription over unenclosed lands it must appear that the user is under a claim of right and the travel on a definite line.

4. SAME—*how prescriptive right may be acquired.* A prescriptive right may be acquired where the use is adverse and with the knowledge of the owner in possession of the land although the land is unenclosed.

5. SAME—*effect of putting a gate in a fence at the place where a right of way is claimed.* The fact that the owner of a tract of land, when enclosing it with a fence, puts a gate in the fence at the place where a right of way is claimed across the tract, is evidence that he recognizes the right of those who use the road to continue to use it by opening and closing the gate.

6. SAME—*erection of a gate across a public highway is a nuisance.* The statute imposes a penalty upon any person placing an obstruction in a public highway, and the erection of a gate across a public highway and compelling the public to open and close it is an obstruction and a nuisance, and no one can acquire a prescriptive right to maintain a nuisance.

7. SAME—*what does not constitute an abandonment of road as a public highway.* Where the owner of land over which a highway by prescription exists erects a gate across the road for his

own convenience in pasturing stock, the fact that the public for many years thereafter open and close the gate when traveling the road does not amount to an abandonment of the road as a public highway.

APPEAL from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding.

A. M. BLODGETT, and W. A. BLODGETT, for appellants.

C. C. McMAHON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee filed his bill in this case in the circuit court of Whiteside county against the appellants, who are the owners of the northwest quarter of the northeast quarter of section 5, township 22, range 4, alleging that he was the owner of lands lying east of said tract upon which he had two dwelling houses and other buildings and upon which he lived with his family in one of the dwellings; that he traded and transacted his business at Fulton and Thomson; that for more than sixty-five years there had been in constant use a public highway from his lands across said tract, intersecting the public highway known as the Bluff road; that the public traveled the highway before the United States government parted with the title and had used the same as such highway continuously since that time; that the commissioners of highways of the town had had possession of the highway for more than twenty years and repaired the same; that said highway leading to and from his lands was the only public highway that passed through or near his lands and furnished the only practicable or feasible road to travel from his lands to Fulton or Thomson or any other market or trading point, and that the defendants on August 25, 1915, served a notice upon him that the highway would be closed by them within thirty days and

prohibited him from entering on the premises on and after September 25, 1915. The bill alleged the road was a public highway. The prayer was that defendants should be enjoined from hindering or preventing the complainant, his tenants, agents and servants and other persons desiring access to or egress from his land, from freely traveling across the tract of land in question on the regularly traveled road between the complainant's land and the Bluff road. A temporary injunction was issued and the defendants answered, admitting that there had been a road or trail leading from the Bluff road across and over the tract of land to the complainant's lands and toward the east therefrom before the United States government parted with the title and since, but denying the existence of the public highway alleged or that the complainant's father and his tenants and others had traveled over the land for more than sixty years; denying the travel was without permission, agreement or license from the owners of the tract or that the commissioners of highways had possession of the highway. or repaired the same or exercised jurisdiction over it, and alleging that the road had been changed from time to time and had varied from one to six rods within the last forty years; that the tract of land had been enclosed with a fence by the owner during the year 1876, and the complainant and his tenants had used the road from that time with the consent and permission of the owners, and that the road had been closed and the public had claimed no right to it for a highway for more than thirty-nine years. The chancellor heard the evidence and entered a decree containing findings that previous to the year 1862 the public began to travel the road and it had been used by the public as a highway for sixty years; that the complainant and his father and his tenants, and other owners and their tenants, had traveled over the road without any permission, agreement or license and the travel was under a claim of a legal right, and that the road was a public highway. After these findings the

decree was limited to a perpetual injunction against the defendants from hindering or preventing the complainant, his tenants, servants, agents and grantees, from traveling on the road, and from placing and maintaining or continuing any obstruction to the free travel of the road by them.

The facts proved were substantially as follows: Complainant is the owner of a farm of about 300 acres lying east of the tract in question and adjoining the same, and there is no outlet by a public highway from his farm and dwelling unless by the road in question. East of the complainant's land is a farm known as the Hook farm, and there is a public highway about one and one-half miles east of the defendants' tract. Between 1844 and 1845 the father of Calvin St. Ores bought the place north of the tract in question and moved there, and bought this tract and made a way up the ravine to get wood and timber. A part of the tract is on the bluff and is timber, and a part of it on the bottom and is open. The bluffs are from seventy-five to one hundred feet high, and the road ran along a valley between the bluffs on the north side of a ravine. As early as 1850 there was a lime kiln in the vicinity and there was considerable government land lying east, and the owners of the lime kiln drew wood down the valley over this road to burn lime. From that time the general public had traveled the road without any leave or license from the owners, and it was traveled without any obstruction and with the knowledge of the owners for more than twenty years, until the year 1877. The Bluff road runs northeasterly and southwesterly and crosses the north line of the tract in question near the center. The road in dispute leads from the intersection of the Bluff road with the north line of the tract southeasterly to a point near the southeast corner. In 1852 or 1853 Calvin St. Ores bought the tract from his father, who had been in possession and lived about forty rods north of it on the Bluff road. St. Ores lived near the tract and was in possession of it until 1876, when he sold it to Hiram

Ingham, and there were improvements on it before that time but it was not enclosed. Ingham devised the land to his daughter and the defendants inherited it from her. About 1857 a man named Wood moved upon the land now owned by the complainant and built a house and lived there about three or four years. He and other owners of land east of the road used it to go west to the Bluff road, and the complainant's lands were purchased by his father about 1862. All who wanted to used the road to go from the lands now owned by the complainant and the lands known as the Hook farm, and others living eastward, traveled the road without permission and under circumstances showing a claim of right. As the land east of the tract commenced to be settled up, people living there traveled over the road at their own will, and from the time that the father of Calvin St. Ores bought the land the owners knew of the use that was being made of the road and made no objection. After Ingham bought the tract he enclosed it with a fence in 1877 and placed a gate across the road near the Bluff road and another gate at the exit to the complainant's lands for the convenience of Hoken Hansen, the father of the complainant, who then owned complainant's land, and for others who used the road. Ingham erected the fence for his convenience because he wanted to let stock run on the tract, and the gates were closed during the summer season but were left open during the winter. From the time the gates were put in the road has been used as before, except that the gates were opened and closed by those passing through during the summer time when it was necessary to have the gates. Stock buyers and any persons having occasion to use the road have traveled over it without asking or obtaining permission, and a witness who hauled cream made one trip over it every morning for about three years. The travel has been substantially over the same line from the beginning, and part of the way being in a narrow valley between the bluffs was necessarily confined to the same

275 — 15

track. The gate near the Bluff road was first placed where there was a mud hole in wet weather, and the complainant asked leave to move the gate north on account of the mud hole and it was agreed that he might do so, and under the agreement it was changed a little more than its width. The only change in travel at any place has been to avoid mud holes. There had been no repairs on the road except such as were necessary to make it passable. It was the custom of the highway commissioners to permit those living back from main roads to work out their road taxes upon the roads leading to their places, and the highway commissioners permitted the complainant and his tenants to work out their taxes on this road.

There was a regularly traveled road across the tract, used by the public generally whenever they saw fit, without the permission of anyone, for a sufficient period before 1877 to establish a public right, and the road was unobstructed up to 1877. It was not necessary that anyone should make public proclamation of the claim of right to use the road, and the circumstances show that the use was under a claim of right. During the time the land was unenclosed the evidence was insufficient to establish a dedication, which requires satisfactory proof either of an actual intention to dedicate or such acts and declarations as equitably estop the owner from denying such intention. No satisfactory inference can be drawn of an intention on the part of an owner to dedicate his lands to public use where they are lying unenclosed. (*Warren* v. *Town of Jacksonville,* 15 Ill. 236; *Kyle* v. *Town of Logan,* 87 id. 64; *City of Ottawa* v. *Yentzer,* 160 id. 509.) But there was no claim of dedication in this case and the right was claimed by prescription. In such a case, where the lands are unenclosed, it must appear that the user was under a claim of right and the travel on a definite line. (*Town of Brushy Mound* v. *McClintock,* 150 Ill. 129.) But a prescriptive right may be acquired where the use is adverse with the

knowledge of the owner in possession of the lands although the land is unenclosed. The evidence was sufficient to establish the right by prescription. When the land was enclosed it was for the convenience of the owner so that his stock might run in the tract, and he put gates in the fence, but the fact that he placed a gate at the exit to the complainant's lands is evidence that he recognized the right of those who had used the road to continue to use it by opening and closing the gate. After that time the public claimed and continued to exercise the right to use the road, opening and closing the gates during the summer season. The right to the use of the road was established by the evidence.

There is a question concerning the finding of the chancellor that the road is a public highway. There is no statutory definition of what shall constitute a public highway, but the statute imposes a penalty upon any person placing an obstruction in a public highway, and the necessity of opening and closing a gate is an obstruction and to that extent an interruption of the public use. The erection of a gate across a public highway and compelling the public to open and close it is a nuisance, (Elliott on Roads and Streets,—2d ed.—sec. 644,) and one cannot acquire a prescriptive right to maintain a nuisance. "Once a highway always a highway" is an ancient maxim of the common law, although so far as the public is concerned the right to a public highway may be abandoned. (Elliott on Roads and Streets,—2d ed.—sec. 871.) There was no abandonment by the public of this highway, since the public continued to travel the road under a claim of right.

The decree is affirmed.       *Decree affirmed.*