CITY OF McCOOK, APPELLANT, v. RED WILLOW COUNTY, APPELLEE.

275 N. W. 396

FILED OCTOBER 8, 1937. No. 29980.

*Butler & James,* for appellant.

*Charles E. McCarl* and *John F. Cordeal, contra.*

Heard before ROSE, DAY, PAINE and CARTER, JJ., and HASTINGS, MUNDAY and RINE, District Judges.

HASTINGS, District Judge.

This action was brought in the district court for Red Willow county, Nebraska, by the city of McCook against the county of Red Willow, to recover certain instalments of pavement assessments levied against the lands of the defendant county. The court found the issues generally in favor of the defendant and entered judgment dismissing the cause. From that judgment the city prosecutes this appeal. The facts are not in dispute.

In the year 1920 defendant purchased 120 acres of land for a county fair ground, approximately 40 acres of which were within the corporate limits of plaintiff city. During that year the county fair board had a part of the grounds located within the city inclosed by a fence. Within the inclosure a grandstand and other buildings were erected, and a race track was laid out, and in this inclosure county fairs were held. A gate was installed along the east side of the inclosure directly opposite the west terminus of O street in said city. This gate is the principal entrance to the inclosure. O street, the most northerly street in the city, extends west from Main street a distance of 3 blocks,

its west end being coterminous with the west side of Third street. In 1920 the first county fair was held upon these fair grounds. In 1921 the county constructed a road from the west terminus of O street west to the main gate, a distance of 750 feet. From the time of its construction the road was used by those attending the county fair in going to and in leaving the fair grounds. It was not used otherwise by the public generally. The road to the point of entrance into the fair grounds was open at all times, but the gate was kept locked, except when a fair was in progress. When fairs were to be held the road was maintained by the county and the county fair board so as to make it more available for use for those attending a fair.

In 1925 the city authorities created a paving district known as "Paving District No. 8," and included in the district that part of the fair grounds east of the inclosure upon which said fair ground road was located; also included in the district, along with some other streets and alleys of the city, was that part of O street from the alley west of First street to Third street. O street runs east and west, and Third street runs north and south. Third street is a part of Highway No. 183, which extends from the northern terminus of Third street to the northeast corner of the fair grounds, thence west along the north side of said inclosure. The city, as a part of its program for paving its streets and alleys within the paving district, paved that part of O street from the alley west of First street west to the west side of Third street, and from that point constructed pavement 30 feet wide on the road on the fair grounds extending west therefrom for a length of about 520 feet, and terminating within said district a short distance east of the gate maintained by the county, or fair board, as an entrance to the inclosure. Neither Third street nor Highway No. 183 was paved, except that part at the intersection of O street and Third street.

Two of the members of the county board and the secretary of the fair board knew of the creation of the paving district, and knew of the improvement being made on the road in question, and made no objection thereto.

Upon completion of the improvement, notice, as required by law, was given of the time and place a hearing would be held by the city council for the purpose of levying special assessments on lots and parcels of land within the district abutting upon or adjacent to any highway, street, avenue, or alley specially benefited thereby in proportion to such benefits, to pay the cost of such improvements. At the time and place set for the hearing no one appeared in behalf of the county to protest or object to the levying of an assessment against the county for benefits derived by it, and the city council found that the land of the county within the district had received benefits in the sum of $4,507.69, and levied an assessment therefor payable in instalments, none of which has been paid.

In this action recovery is sought of one-half of the instalments, the remaining instalments having been barred by the statute of limitations.

Section 4283, Comp. St. 1922, as amended by chapter 135, Laws 1923, under which the city acted, gave the city the right "To curb, pave, repave, gravel, macadamize or otherwise improve and gutter any highway, street, avenue or alley therein, and for that purpose to create suitable improvement districts, and to levy a special assessment on the lots and parcels of land abutting on or adjacent to such highway, street, avenue or alley, or specially benefited thereby in such district, in proportion to such benefits to pay the expense of such improvements. * * * Provided, if in any city or village governed by the provisions of this chapter, there shall be any real estate belonging to any county, school district or municipal or other quasi-municipal corporation, adjacent to or abutting upon the street or other public way whereon paving, repaving or other special improvement has been ordered, it shall be the duty of the board of county commissioners, board of education or other proper officers to provide for the payment of such special assessments or taxes as may be assessed against the real estate so adjacent or abutting, or within such improvement district belonging to the county, school

district or municipal or quasi-municipal corporation. In the event of the neglect or refusal so to do, the city or village may recover the amount of such special taxes or assessments in any proper action, and the judgment thus obtained may be enforced in the usual manner."

It is the contention of counsel for the county that the road extending from the west end of O street to the entrance gate was not a "highway" or "public way" which the city was authorized to pave, and levy special assessments against the land of the county to pay the cost thereof.

A "highway" or "public way" which a city has power to pave or improve, and levy a special assessment to pay for the cost thereof, under the foregoing statutory provisions, is a public highway within the corporate limits of the city as distinguished from a street.

The road paved and improved by the city upon the land of the county was not a street within the meaning of the statute, there having been no express or formal dedication by the county of the road as a street, nor an acceptance by the city as required by section 17-507, Comp. St. 1929, neither was the road a public road as defined by section 39-103, Comp. St. 1929.

The contention of the city is that the road in question was a public highway by implied dedication. By the decisions of this court the law is well settled that a public highway may be established by implied dedication. *Graham v. Hartnett,* 10 Neb. 517, 7 N. W. 280; *Rube v. Sullivan,* 23 Neb. 779, 37 N. W. 666; *Brown v. Stein,* 38 Neb. 596, 57 N. W. 401; *Close v. Swanson,* 64 Neb. 389, 89 N. W. 1043; *Cassidy v. Sullivan,* 75 Neb. 847, 106 N. W. 1027; *Carpenter v. Schnerle,* 91 Neb. 806, 137 N. W. 850; *Burk v. Diers,* 102 Neb. 721, 169 N. W. 263.

In *Burk v. Diers, supra,* we held:

"To constitute implied dedication by the owner of land of its use for a public highway, there must be present the intent to appropriate the land for public use. The intent may, however, be expressed in the visible conduct and open

acts of the owner. If the acts are such as would lead ordinarily prudent men to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation.

"In such case the facts and circumstances must be such as indicate an unequivocal intent to devote the strip of land to the public use."

And in *Carpenter v. Schnerle, supra*: "In order to constitute a highway by dedication, it is not necessary that the offer of dedication be accepted by the public authorities. It may be accepted by the public itself, and the acceptance by the public itself is shown by its entering upon the land and enjoying the privilege offered by user."

It is contended by counsel for the county that the facts in this case fail to show an implied dedication by the county of the strip of land upon which the road paved by the city was located, but that the facts do show that the road was merely a roadway or passageway constructed and maintained by the county solely for the convenience of patrons of the fair in going to and from the inclosure where fairs were held.

In 18 C. J. 105, it is said: "Where the proprietor of land constructs a road over it for his own convenience, the mere user thereof by the public, by sufferance of the proprietor, no matter how long continued, will not show a dedication of the way to the public use nor vest any right in the public to the way. In applying this rule, it has been uniformly held that a way constructed merely to provide convenient access to the owner's place of business, as for instance, to a railroad depot, a wharf, or a store, does not become a public way from user by the public in going to and from such place of business."

Counsel for the city contends that, while the rule announced applies where the owner of the land over which the public highway is sought to be established by dedication is a private person or private corporation, it has no application in case the owner is a governmental subdivision.

Counsel argues, as the land used for fair ground purposes was public land, the road constructed by the county board thereby became a public highway or public way open to the use of the public generally. We think the law, as announced in the authority cited, is applicable to the facts in this case. The mere fact that the road was on public land would not of itself make it a public highway. The county acquired the land to be used for the one purpose of holding county fairs thereon. It established the place for holding fairs a short distance from the eastern boundary line of the land used for fair ground purposes. To carry out the purposes for which it acquired the land, the county board constructed and maintained the roadway or passageway over the uninclosed part of the fair grounds to the inclosed part where fairs were held. The sole purpose in constructing and maintaining the road was that those attending fairs might have a way over the uninclosed part of the fair grounds in going to and from the inclosed part. It is a matter of common knowledge that county fairs are held annually, and then for only three or four days at a time. At times when a county fair was not being held on the fair grounds the road was not used by the general public. The road at its western terminus connected with no highway or public way and was of no use to the public generally. It is clear from the evidence that the road was not intended as a public highway for the use of the general public at any and all times, but only for the purpose stated.

We hold that the evidence is insufficient to show such an intent to dedicate the strip of land upon which the road in question is located for the use of the public, or reliance thereon and acceptance by the public, as is necessary to constitute a public highway by dedication.

The road in question was not a "public highway" or "public way" which the city, under its charter, was authorized to pave and improve, and to levy a special assessment to pay for such improvement. The special assessment was unauthorized and void.

We have held in numerous cases, where special assess-

ments against property to pay the cost of paving are void, knowledge of the proceedings and of the construction of the improvement will not estop the owner from avoiding liability therefor, and they cannot be enforced solely on the ground of the benefits of the improvements to the owners of abutting lots or lands. *Harmon v. City of Omaha,* 53 Neb. 164, 73 N. W. 671; *Leavitt v. Bell,* 55 Neb. 57, 75 N. W. 524; *Batty v. City of Hastings,* 63 Neb. 26, 88 N. W. 139; *Henderson v. City of South Omaha,* 60 Neb. 125, 82 N. W. 315; *John v. Connell,* 61 Neb. 267, 85 N. W. 82; *Morse v. City of Omaha,* 67 Neb. 426, 93 N. W. 734.

Counsel for the city concedes this to be the law, but urges that, even though the road in question was not a "highway" or "public way" which the city was authorized to pave under its charter, the city had the undisputed right to pave and did pave O street from the alley west of First street to Third street, and the property of the defendant being adjacent to or abutting upon that street, that for the improvement on said street the city had a right to levy a special assessment, and if the amount of benefits received by the property of the county was not as great as assessed against it, the county should have appeared before the city council, sitting as a board of equalization, and objected, and not having done so the assessment made is now beyond dispute. While the city may have had the right to levy a special assessment against the county for any benefits received from the paving of O street, it does not appear from the record that such right was exercised. It is apparent from the record that benefits the county might have received from the paving of O street were not included in the special assessment levied against the county. It appears that the special assessment levied was to pay for the cost of paving and improving the road upon the county land.

The special assessment levied being void for the reasons stated, the judgment denying a recovery therefor is right and is

AFFIRMED.