STATE OF NEBRASKA EX REL. GAME, FORESTATION AND PARKS COMMISSION, APPELLEE, v. CLINT HULL ET AL., APPELLANTS.

RAT LAKE CLUB, INC., APPELLEE, v. CLINT HULL ET AL., APPELLANTS.

97 N. W. 2d 535

Filed July 3, 1959. No. 34547.

806

*William B. Quigley, Healey, Davies, Wilson & Barlow,* and *Patrick W. Healey,* for appellants.

*Clarence S. Beck,* Attorney General, *Homer G. Hamilton, Perry, Perry & Nuernberger, Edwin C. Perry,* and *John Evans,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The controversy in this litigation concerns the existence or nonexistence of a sandhill trail road across the land of appellants in Cherry County as a public road by prescription or implied dedication. Appellees assert that the sandhill trail road, hereafter referred to as the road, has been a thoroughfare used by the public for more than 10 years prior to September 19, 1956, under claim of right, adversely, openly, and continuously; that the road was and is clearly defined and was

during the period above mentioned used uninterruptedly and in substantially the identical location; that Cherry County has recognized the existence of the road as a public highway by contributing to its maintenance, by making improvements to it, and by keeping it in condition for travel during and following periods of adverse weather; that Clint Hull and Gretchen Hull on or about September 19, 1956, erected a barrier across the road where it entered their land in its course from the east towards the west and illegally obstructed and prevented the use of the road by the public, including appellees; and that Kurt Wendler and Agnes O. Wendler were intending, as appellees were informed, to prevent them from having the use of the road across the land of the last-named persons and that they would prevent appellees from having access to and from property owned by them to their irreparable harm and injury. The relief appellees sought was that appellants be enjoined from continuing the barrier across and the obstruction of the road; that they be required to remove them from the road; and that they be barred from interfering with the right of the public in the use of the road as a public highway.

Appellants denied generally except they admitted that Hull erected the barrier and prevented the public, including appellees, from entering upon and trespassing on the land owned by appellants. They alleged that any travel by anyone on and across their land was with the express permission of appellants and was not adverse or under claim of right; that no claim of right by prescription or otherwise to a way across the land of appellants was claimed or asserted by appellees or any other person prior to the commencement of this litigation; and that any right claimed by appellees to a road across the land of appellants has been abandoned and forfeited. Appellants ask that the petition of appellees be dismissed; that the trial court find and adjudge that there was no public road or easement for a right-of-way

of a public road on or across the land of appellants; and that appellees be enjoined from trespassing upon the land of appellants. The issues in the case were completed by a reply which was essentially a denial of any new matter in the pleading of appellants.

The district court found generally in favor of appellees; that the road was by virtue of adverse use for more than 10 years and was by dedication a public highway 40 feet wide, the center line of which was specifically detailed in the findings; that the course of the road has had slight deviations to avoid sand blowouts, mud holes, natural obstructions, and as a result of action by the respective landowners in the relocation of cattle gates or the grading of the road but that the course of it has remained substantially the same for the period of its adverse user and has been in existence in the area which it traversed for as much as 60 years; that the deviations in the course of the road were not substantial considering the nature of the area crossed by it and were less than in many sandhill routes; that there had been dedication by the respective owners of the road; that the deviations specifically described in the findings were caused by or participated in by the respective landowners; that the dedication of the road occurred simultaneously with the deviations or have since been acquiesced in by the owners to an extent greater than passive permission of the user of the way and the dedication has been concurred in by the authorities of Cherry County and it has exercised control of and expended public funds in the construction and maintenance of the road; and that the width of the road was fixed by the court at 40 feet because of the statute that public roads shall not be less than that width. The judgment was appropriate to the findings and the relief asked by appellees. The motion for new trial by appellants was denied. The result of the trial and the final action of the trial court were the occasion of this appeal.

The two cases identified in the caption were by stipulation of the parties consolidated in the trial court and in this court. They were in all respects treated in the district court as one case and they will be so considered herein. The contestants to this appeal are Clint Hull, Gretchen Hull, Kurt Wendler, and Agnes O. Wendler who will be collectively designated as appellants except if it is necessary to speak of them as individuals. The name Hull will be used to identify Clint Hull and Gretchen Hull and the name Wendler will be used to designate Kurt Wendler and Agnes O. Wendler. Appellees as used herein refers to the State of Nebraska ex rel. Game, Forestation and Parks Commission and the Rat Lake Club, Incorporated, collectively. Appellants are the only defendants in the trial court who appeared and contested the case. There is no cross-appeal.

U. S. Highway No. 83, hereafter referred to as Highway No. 83, extends north and south through the east half of Section 25, Township 29 North, Range 28 West of the 6th P. M., in Cherry County. There is a Federal Wildlife Refuge in the northern part of Section 26. Hull owns Sections 27 and 28 and a part of Section 33. Wendler owns parts of Sections 33, 32, and 31 in that township and range. Rat Lake Club, Incorporated, a Nebraska corporation, owns a part of Sections 31 and 30. The State of Nebraska owns a part of Section 30 in the township and range above described and a part of Section 25 in Township 29 North, Range 29 West of the 6th P. M., in Cherry County. Rat Lake is in a part of Sections 30 and 31, Township 29 North, Range 28 West of the 6th P. M. The land of the Rat Lake Club is adjacent to the lake. Beaver Lake is generally in Section 25, Township 29 North, Range 29 West of the 6th P. M. The land of the State of Nebraska has not been improved by any structures or services thereon but is used to some extent by the public for recreation. The Rat Lake Club is a private organization and has existed since 1930. Its property is used for the recreation of its mem-

bers and guests. The number of the membership is not shown by the record.

The eastern terminus of the road originates at Highway No. 83 in the northern part of Section 25, Township 29 North, Range 28, and extends in a northwesterly direction through Section 26, through the southwest part of Section 23, and into the southern part of Section 22. A short distance east of the quarter corner between Section 22 and Section 27 it enters the Hull land and proceeds in an irregular course to the west and southwest into and through the southeast quarter of Section 28. It passes from that section a short distance east of the southwest corner of the southeast quarter of that section and proceeds in a southwesterly direction where it leaves the Hull land and enters the Wendler land. It then continues in a generally western or northwesterly direction across the north half of Section 32, into Section 31, and in a northwesterly direction along the south of Rat Lake and Beaver Lake. Near the west point of Beaver Lake it divides, one trail going to the northwest and one to the southwest. The government of the United States located and opened a post office on the road near the center of the north half of Section 32 at a place called Conterra. The post office was discontinued in 1938 but the location on the road still has the name of Conterra. Sweetwater Valley mentioned in the record is generally east of the Hull land. The description of the land and the location of various things mentioned herein are specifically detailed in the record. They are not required to be repeated.

The primary issue in this case is whether there is and has existed an easement for a road across the land of appellants which appellees are entitled to claim as a public highway by prescription or implied dedication. The technical distinction between the terms is not important in this case because it is recognized that both require long, continued use under claim of right and that evidence with respect to the issue of implied dedi-

cation may also be applicable to the contention of a prescriptive easement and vice versa.

Burk v. Diers, 102 Neb. 721, 169 N. W. 263, rejected a claim that a public highway existed and in doing so declared: "If a public highway, it was acquired either by prescription or implied dedication. Both are urged. The law on this subject is not always clearly stated and is frequently difficult of application. Evidence to show dedication may also bear on the question of prescription, and vice versa. No express dedication, either oral or written, is claimed." Likewise, Smith v. Nofsinger, 86 Neb. 834, 126 N. W. 659, emphasized substantial identity between the two concepts by this observation: "Whether we say that ten years' continuous adverse user raises a presumption of dedication, or that it vests the public with an easement of the right to travel the way, is not material, the same conclusion is reached by either process of reasoning."

The record contains evidence as follows:

Neil Hanna, about 80 years old, who came to the area east of the Hull land when he was 7 years of age and who owned a ranch in that vicinity for about 20 years, said he was familiar with the Rat Lake and Beaver Lake road, the name that has been applied to the road involved in this litigation, and that the road went from Highway No. 83 up by Homestead and Campbell Lakes north of the refuge and then turned south and went up along there. He first went over the road when he was 11 years of age and has used it ever since. He has traveled it many times. He has gone fishing over there in many of the years. He followed the same route and the road has been there during these years. He did not ask permission to travel the road. There were other people who used it. Everybody was using it until the road was blocked. The road went in the same general direction as he has known it and traveled it. There have been divergences in the course of the road just like any other sandhill road.

Herman Holmes of Mason City testified he home-
steaded in 1900 the land on which the Rat Lake Club
is situated. He was a member of the club during a
period of time but was not at the time of the trial. He
sold the land in about 1904 and the purchaser sold it
to the club. The road was used to get in and out of the
place the 3 years when he homesteaded and lived there.
There was a trail from there east up Sweetwater Valley.
There was some travel south through Brownlee but
most of the travelers used the Rat Lake Club road
sometimes known as the Sweetwater Valley road. The
road took him through part of the game reserve land.
Since he moved to Mason City he had traveled over the
Rat Lake and Beaver Lake road mostly for fishing and
hunting. He has seen other persons use the road. The
witness did not ask permission to use it. It was the
road he used many years commencing in 1884 and is
substantially the same that exists in that area now.
More than 20 years ago at least there was a post office at
Conterra. There has not been any material change in
the route of the road. It just went about the same
place and the same direction as it does now. It is the
same road.

Guy Vian, a rancher in central Cherry County, has
used the road from the game refuge to Rat Lake and
Beaver Lake. It was and is the only road in that area.
He remembers of being taken over the road when he
was a child and recalls the road distinctly since 1906,
or for more than 50 years. He used the road to go
fishing, to go to the neighbors, or on business occa-
sions. He homesteaded west of there. His father lives
east and his brother homesteaded on part of the same
land. It was the only road into that area from what
is now Highway No. 83 and before that highway ex-
isted the Rat Lake and Beaver Lake road was the only
route from Sweetwater Valley to Rat Lake and Beaver
Lake. The road was a trail which had in places been
graded. It had auto gates in places and there were

places travelers had to go around. The road was hayed at times in places and at times there were places too sandy to travel over or through. It is a typical sand-hill road. There has been no substantial variation in the road during the 50 years the witness has been traveling it. The inlets and the outlets have been the same as he remembered them during this long period. It has been open continuously through the more than 50 years until it was barricaded in 1956. The witness asked no permission to use the road during this period.

Mr. Beed, a resident of Valentine who has lived in that area 62 years, was an electrician but at the time of the trial he was a feed salesman. It was then and had been necessary as a part of his business for him to travel over the area of Cherry County to a very considerable extent. He called on ranchers and he has used the Rat Lake and Beaver Lake road since in 1916 when he first traveled it on a hunting trip. The road extended from the Hull land on the north line of Section 27 at the auto gate where it did at the time of the trial. Where the road left the game refuge that was about the entrance into the Hull land. If there has been any change in the road it has been slight. The road was about the only way to get through the hills. The witness was over the road every year commencing in 1916 except 1½ years when he was in the army. He hauled feed to Rat Lake and Beaver Lake. He went fishing out there and he hauled a cattle chute over the road. He had been to the Wendler place using this road. The entrance to the Hull land has been in the same place for more than 10 years. The witness did not ask permission to use the road. The road as it leaves the game refuge angles across the Hull land, across the Wendler land, and then on to Rat Lake and Beaver Lake. It is just a sandhill road. Sometimes a traveler on it had to turn out and go outside of the general trail around sandy places that had not been hayed recently but the general track has always been about in the same place.

There has not been much change in the road from the time he first used it to the time of the trial. He saw two yellow graders, county equipment, working on the road at the Wendler place. He saw a couple new auto gates put in on the road and that it had been hayed from time to time. He has seen other persons using the road. The general public, everybody who has to go out there for anything, has to travel that road. The witness said there might have been variations from the regular route of the road at times for as much as about 100 feet when travelers were forced to avoid holes or sandy places but they came back into the road in a very short distance. Everyone thought it was a county or a public road and everybody traveled it. There were blowouts that hay would have helped if the county had cared for the road. The witness thought it was a county road. Most of the land on the route of the road is range land. He saw no cultivated land on the Hull place of at least 1,000 acres. He saw places in the road where the county had regraded, remade, and hayed the road.

Clarence H. Holmes, a resident of Mason City and of the Sand Hills for 56 years, said he first traveled the road involved in this case in the fall of 1916. He was duck hunting in the Sweetwater Valley and went from there to the Gus Wendler place. (Gus Wendler bought the land on which the Rat Lake Club is situated from Herman Holmes who homesteaded it.) The witness located Sweetwater Valley which extends from the southeast to the northwest and crosses Highway No. 83 at about 2 miles east of the east side of the Hull land. The witness used the road in question commencing in the fall of 1916 and continued until the game refuge was established. He was over the road at least once or twice each year. He did not use the road after the refuge was put in until 1946 and he then traveled it from two to eight or ten times each year until 1956. He has seen haying and some grading done on the road. There were cattle gates and auto gates so that travelers could drive

through. He followed the same course during the years he used the road, with slight deviations resulting from natural causes. When a traveler went around these places that were out of condition he came back into the original trail in a very short distance. The road was barricaded in 1956. Clint Hull then refused the witness use of the road. The witness sought no permission to use the road at any time before 1956 when it was obstructed. The witness used the road commencing in 1916 because it was the main traveled way. Everybody used it. He had seen others using the road from 1916 to 1956. The public used the road and there was quite an amount of traffic on it. The witness would see as many as five or six cars a day coming in or going out of that area. The witness saw poles in the road at places on the Hull land at mud holes and blowouts to direct traffic from them. Travelers turned out at such places, passed the out-of-condition locations in the road, and then returned to it. The width of the trail or road was the width of one automobile. About 1951 there was a change at one place in the road a distance of probably 100 feet from the course of the road as it had been for the benefit of the Hull meadow. The county machines were out there and did some grading. There were places where conditions made it necessary to divert from the usual course of the road for a short distance which had not been hayed or regraded and the traffic then again followed the original course of the road. Vehicles traveling in different directions met, turned out of the trail sufficiently for them to pass, and returned to the road.

Everett Stillwell, who resided in the south central part of Cherry County, had lived in the county 55 years. He traveled the road from the game refuge to Rat Lake and Beaver Lake when he was 15 years of age, 40 years before the trial. He has been over the road at least an average of once each year. The road has been used by the general public, it has had the same course during the years above described, and it has been graded some

on the land of Hull and Wendler. It was maintained by putting hay on it and by grading it in some places. There were auto gates all the way through and they were installed by the county. The witness helped put in one of them and the others were made of pipe and cement and were of the type the county installs. There was one change in the road the witness could recall and that was from the road out of the low ground up along the edge of the hills. The distance the road was moved was about 50 feet. He knows of no other change made during the years he traveled the road.

F. J. Fahrenderger now lives in Mason City. He was an original stockholder of the Rat Lake Club. He testified the road commencing at Highway No. 83 to the Rat Lake area goes through the game refuge area and the land of Hull. Witness traveled the road since 1919. He was over it about April 1956. It went from the same point to the same point then as it did in 1919 and the road was located in the same area. It has been used by the public. Places in the road were hayed almost every time he used it. There were auto gates on the road. On a trip from Rat Lake to the game refuge witness would pass six or eight cars and he would see two or three in the rear following him. It was the only road he knew in that area. Many hunters and fishermen used it. He had seen county graders on the road. The Rat Lake clubhouse was constructed in 1927. During the years the witness used the road he traveled in the same trail.

Bert Fillpot has lived in Mason City for 11 years and is a member of the Rat Lake Club. He drove the road from the game refuge to Rat Lake and Beaver Lake since 1946 until it was barricaded in 1956. He used it first in 1925. It has been the same road and it followed the same route through the same area. He saw county equipment used on the road and he saw one of the county's patrols grading the road east of and on the Wendler land. He has seen the county maintainer

working on the Rat Lake and Beaver Lake road. The witness never asked permission to use the road. He saw lots of people using it, mostly strangers. One weekend in 1952 there were 15 cars stuck on that road. There was an old auto gate at a place now located by a tree. That was 12 or 15 years ago. It was discontinued in 1949. Thereafter an auto gate 100 to 200 feet from the original one was used as a part of the road. There was not much variance along the road. He could not detect much difference in the road he traveled in 1946 and the one he traveled in 1956.

Marvin W. Heth has lived in Valentine during his lifetime. He has been an electrician and in his business he has traveled in the vicinity. He first used the road from the game refuge to Rat Lake and Beaver Lake in 1918. He used it on a fishing trip and on business. He was over the road the last time in December 1955. The road has been about the same during the years. It had hay on it in places at different times. There were auto gates on it. No permission was required to use the road. Other people used it and witness thought it was a public road. The road was the width of a car.

James W. Gray first used the road in question in 1929 when he hauled fence material for the property of the state on Rat Lake and Beaver Lake. He used the road quite regularly since then. He did not ask permission to use it. Where it was hilly it had to be hayed. The road was used by fishermen, ranchmen, and people hauling feed. The principal maintenance of the road was putting hay on the sandy places to prevent blowouts. If this is done such a road can be traveled over a period of many years. The road in question was fairly well maintained. Witness did not recall any wide variance in it.

Aerial photographs were taken of the area concerned in this case in the year 1946, a field check was made in 1949, and a map was published by the Geological Survey as a part of the Department of the Interior program

for the development of the Missouri River Basin. A map therefrom was produced and published by the Department of the Interior in 1951. The map shows the existence of a road in substantial agreement with the evidence produced by appellees concerning the road in issue in this case. Appellants concede that for a substantial period of time travel has been possible over the road from the Sweetwater Valley in the vicinity of what is now Highway No. 83 and along the south side of Rat Lake, passing over the land of appellants; and that for a substantial period of time, probably 40 years or more, there has been something in the nature of a sandhill trail across the land in question. The essential fact question they say is whether the nature and extent of the user establish a prescriptive right to a particular road which appellees may lawfully assert is a public road. Appellant Kurt Wendler testified that there had been a road across his land and the Hull land for as much as 30 years; that the road proven by appellees as existing in 1946 was the main traveled road; that the trail was first there about 1916; that the road of 1946 was the old road; and that the road was there when the witness moved there in 1918. He also testified that this road was for some time a mail route. When appellant Clint Hull was asked how long the old trail was traveled he said 10 years. There was substantial corroboration of the claims of appellees in the concession and testimony of the appellants.

Appellants assert that a claimed easement by adverse user is not favored by the law and all elements must be proved by clear, convincing, and satisfactory evidence. They argue the evidence of appellees concerning the easement claimed in this case is insufficient to establish it within the requirements of the stated rule. Appellants have correctly stated the applicable law. It has often been stated and was recently repeated by this court. The use and enjoyment which will give title by prescription to an easement is substantially the same

in quality and characteristics as the adverse possession which will give title to real estate. The use must be adverse, under claim of right, continuous and uninterrupted, open and notorious, with the knowledge and acquiescence of the owner of the servient tenement; and must continue for the full prescriptive period. To prove a prescriptive right to an easement, all of the elements must be established by clear, convincing, and satisfactory evidence. Wemmer v. Young, 167 Neb. 495, 93 N. W. 2d 837.

Appellants have incorrectly appraised the proof concerning the prescriptive easement claimed by appellees. There is evidence that a road has existed for at least 50 years across the land of appellants. Appellants offered evidence of the existence of such a road for as much as 30 years. The point of its entrance on the land of Hull has been continuous. It has traversed the identical general area of the land of appellants and has been used by the public freely without objection or interference of or by the owners of the land. No traveler who desired to use the road was molested or denied the privilege until 1956 when the road was barricaded by Clint Hull. There was substantial identity of origin, course, location, and use of the road on the land of appellants for a great many more years than the statutory period of 10 years. The road was maintained for travel thereon by all who desired to use it except when there was heavy snowfall and accumulation of snow on the road or in a few instances when low places were too wet for travel by vehicles. Any deviation in the road was caused by the action and demonstration of nature, the act of the landowner, or with his consent and acquiescence. On no occasion was the continuity of the road disturbed or obstructed by any deviation from its course.

The road was equipped at its entrance to the land of appellants and along its course through the land with what is called in the record "auto gates." These were an invitation to travelers to use the road. They permit-

ted continuous travel without stopping or inconvenience and they were at all times maintained. In Hansen v. Green, 275 Ill. 221, 113 N. E. 982, the court said: "The fact that the owner of a tract of land, when enclosing it with a fence, puts a gate in the fence at the place where a right of way is claimed across the tract, is evidence that he recognizes the right of those who use the road to continue to use it * * *."

If a bad place in the road developed, such as a blowout of sand, the condition was indicated by timber put upright therein as a warning and also as a suggestion to travelers to go around the place that was out of condition for travel. There was not during the more than half a century referred to above any attempt to obstruct, close, or accomplish an abandonment of the road or to eliminate or prevent travel thereon. On the contrary, many things were done by or with the consent or acquiescence of the landowners to have and keep the road in condition for use by all travelers who desired to use it. Appellants were paid by the county for many things done and furnished by them. The county performed acts and expended funds, some at the request of at least one of the appellants, to improve and maintain the road suitably for public use. There is evidence that the county paid Kurt Wendler for labor performed and materials furnished by him on account of the road and its improvement and maintenance on claims presented by him for the years 1943 to 1954 the sum of $184.20. Likewise, there is proof that the county paid Clint Hull for labor performed and materials furnished on account of the road and its improvement and maintenance for the years 1943 to 1955 the sum of $730.40 on claims presented by him. These expenditures by the county were in addition to the work done and the materials and equipment furnished by the county for the improvement and maintenance of the road.

The declaration of Clint Hull in 1952 to the county

that he was going to attempt to close the road if the county did not do some grading of it which he wanted done is of more than passing significance. The county did the grading and the road continued to be used until Clint Hull obstructed it 4 years later. In the early years the travel thereon was light and infrequent. It increased with the passing of time to the extent that by 1956 it was such that Clint Hull wanted to stop all travel on the road. That was presumably his motive for barricading the road in that year. The United States established and maintained a post office at Conterra on this road for a number of years. The exact length of time is not fixed in the record. The road from Sweetwater Valley to and across the land of appellants and on to Rat Lake and Beaver Lake was and is the only road through that area for what was and is, generally speaking, east-and-west travel.

The use and enjoyment required to establish by prescription an easement for the road was clearly, convincingly, and satisfactorily shown. The use and enjoyment were, because of the circumstances shown, adverse, under claim of right, continuous, exclusive, notorious, and with the knowledge of appellants for more than the full prescriptive period.

Hopkins v. Hill, 160 Neb. 29, 68 N. W. 2d 678, contains the following: "Where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid acquisition of easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. * * * If the use of an easement has been open, adverse, notorious, peaceable, and uninterrupted, the owner of the servient tenement is charged with knowledge of such use, and acquiescence in it is implied."

There is no convincing evidence that the use of the

road was, in a legal sense, permissive and not adverse under a claim of right. The evidence of the many persons who appeared at the trial who had used the road was direct and without exception that no permission to travel there was asked or given; that none of them were interfered with; and that many of them thought, as was generally believed, that it was a public or county road.

Appellants contend evidence is lacking of continuing use by the public of a substantially identical road, without deviation, for the prescriptive period. Any deviation in the course of the road was because of the inherent nature of the area traversed, natural causes and conditions, the acts of the landowner, or his acquiescence in what was done by others. In this connection it should be said there was no variation shown that impaired the identity of the road. It was testified by Clint Hull, one of the appellants on whose land the principal variations were claimed, that except the moving of one gate for a distance of 85 feet it was natural causes which made necessary any deviation in the road from the original course and location of it. He said the gate referred to which was moved was necessarily moved because he moved and changed the road for a short distance for his benefit, the improvement of his meadow, and the improvement of the road. His testimony contains statements of this nature: In 1952 he changed the road and later further changed it again to benefit his meadow. In doing this he got the county to come out to do some work on the road. In another instance he said that is where he changed the road. Previously in his testimony he said he changed the road and brought it "around here." Likewise, he said he did some leveling and some haying and he changed the road himself. He was asked if there was a road through a certain auto gate into his land and he said there was but when it got wet he had to move it. There is undenied evidence that when the commencement of a survey was about to begin on the Hull land, he showed the men who were there because

of the impending survey where he claimed there had been changes in the road from the original to the existing road and he said the changes were made to benefit or to please him better.

The district court found that any deviations in the road were participated in or were acquiesced in by the respective landowners to an extent greater than passive permission of the use of the road; that slight deviations had occurred in the course of the road because of its sandy nature and to avoid sand blowouts, mud holes, and natural obstructions and as a result of the acts of landowners but the course of the road has remained substantially the same; that a road has been in existence in that area for as much as 60 years; and that such deviations were not substantial considering the nature of the area traversed by the road and are less than is usual in many sandhill routes. The findings of the court in these respects are justified by the evidence.

Kendall-Smith Co. v. Lancaster County, 84 Neb. 654, 121 N. W. 960, contains the following: "In this connection plaintiff invokes the following rule announced in Engle v. Hunt, 50 Neb. 358, and followed in other cases: 'To establish a highway by prescription there must be a user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land.' * * * Slight variances to avoid mud, pools, encroachments or obstructions are frequent on roads acquired by user, and are exceptions to the rule quoted * * *. The deviations relied upon by plaintiff fall clearly within the following doctrine announced by this court in Nelson v. Jenkins, 42 Neb. 133: 'It is not indispensable to the establishment of a highway over lands by prescription, or adverse user, that there be no deviation in the line of travel. If the point of travel has remained substantially unchanged for the full period, it is sufficient,

even though at times, to avoid encroachments or obstructions upon the road, there may have been slight changes in the line of travel.' "

Carpenter v. Schnerle, 91 Neb. 806, 137 N. W. 850, states: "Slight deviations from the line of public travel to avoid mud, pools, or natural obstructions will not necessarily prevent the establishment of a highway by prescription * * *."

Lindsay Land & Livestock Co. v. Churnos, 75 Utah 384, 285 P. 646, states: "Though public cannot acquire right by use to pass over tract of land generally, but only in certain line or way, it is not indispensable that there should be no deviation in use from a direct line of travel, and if travel has remained substantially unchanged and practical identity of road preserved, it is sufficient, although there may have been slight deviations from common way to avoid encroachments, obstacles, or obstructions upon road."

Berger v. Morton County, 57 N. D. 305, 221 N. W. 270, states: "The plaintiff, down to the bringing of this action, has continuously recognized the right of the public to use the trail or road in question across his land. He recognized it in 1916 when he desired the road relocated. Having acquiesced in its relocation and having stood by while the public authorities expended public funds in the improvement of the road as thus located, he is not in a position to question either the identity of the line of travel or the continuity of the use."

Dortch v. Sherman County (Tex. Civ. App.), 212 S. W. 2d 1018, states: "Location of a public easement may be changed with express or implied consent of both interested parties, and an estoppel to claim a former location to be the true one arises from acquiescence in a change. * * * Landowner who has acquiesced in relocation of a road over such land and stood by while public authorities expended public funds on improvement of road as thus located cannot question the identity of the

line of travel. * * * A change of location of road made by owner of land for his own convenience after the right of public in the road has become established through use does not defeat such right."

In Mudge v. Wagoner, 320 Ill. 357, 151 N. E. 276, it is stated: "Where the owner of land over which a road extends changes the route for his own convenience and the public continue the use of the highway as changed, the public right therein does not become extinguished but exists in the highway as changed, and a change in the course of the road after the right of the public is established by user for the statutory period does not defeat the public right to use the road as previously established."

In Central Pacific Ry. Co. v. Alameda County, 284 U. S. 463, 52 S. Ct. 225, 76 L. Ed. 402, the court said: "The original road was formed by the passage of wagons, etc., over the natural soil, and we know, as a matter of ordinary observation, that in such cases the line of travel is subject to occasional deviations owing to changes brought about by storms, temporary obstructions, and other causes. But, so far as the specific parcels of land here in dispute are concerned, we find nothing in the record to compel the conclusion that any departure from the line of the original highway was of such extent as to destroy the identity of the road as originally laid out and used. Even in the case of highways sought to be established by prescription, where the user must be confined to a definite line, slight deviations are not regarded as material."

An implied dedication of the road by appellants was pleaded by appellees. It was found to exist by the trial court. A public highway may be established by implied dedication in this state for use as a public highway if it is established that there was present the intent to appropriate an easement for such public use. The intent may be expressed in the visible conduct and acts of the owner if they are such as would lead ordinarily pru-

dent men to infer an intent to dedicate; and if they are so received and acted upon by the public, the owner cannot after acceptance recall his appropriation. In order to constitute a highway by implied dedication it is not necessary that the offer be accepted by the public authorities but it may be accepted by the public itself and its acceptance by the public may be shown by its entering upon the land and enjoying the privilege offered by user. City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396. The circumstances of this case as recited above were sufficient to constitute an implied dedication of an easement across the land of appellants to the public for its use as a public highway.

The pleadings are silent as to the extent of the easement claimed in the land of appellants by appellees as a right-of-way for the road they sought to have established by action of the district court. The word "extent" is in this respect used as meaning width. The direct evidence concerning it is very meager. One witness said a trail across the land was the width of an automobile and when the road was out of condition because of a mud hole or blowout the traveler would go around but not out of the road very far, and that when two cars would meet approaching from opposite directions they would each pull to the side enough to pass and then turn right back into the road. The testimony of the county surveyor was that when the trail was surveyed by him in July of 1956 a car was operated on it and the trail was the width of the car. The trial court found that the road was, because of use and by dedication, a public highway 40 feet wide, the central line of which was specifically described and that the width of it was fixed at 40 feet because of a statute which said that public roads should not be less than that width. § 39-104, R. R. S. 1943. The statute of which that section was a part is not applicable to or important in the consideration of this case. It was repealed in 1957.

Laws 1957, c. 155, art. VIII, § 1, p. 562. Section 39-104, R. R. S. 1943, related only to roads laid out in pursuance of any law of the state and roads located and opened by the county board of any county and traveled for more than 10 years. § 39-101, R. R. S. 1943.

Donovan v. Union P. R. R. Co., 104 Neb. 364, 177 N. W. 159, states: "The width of a public highway, acquired by adverse user or dedication, is to be determined as a question of fact by the character and extent of the user, or the amount actually dedicated to public use. It need not be 66 feet in width, as prescribed by statute."

Mulch v. Nagle, 51 Cal. App. 559, 197 P. 421, discusses the subject in this manner: "While it is provided in section 2620 of the Political Code that all public highways shall be not less than forty feet wide * * *, this restriction has application to such highways only as are laid out by formal act of the proper public authorities and after the initiation of the requisite preliminary proceedings, and has no application to such highways, roads, or lanes as have been created by dedication or abandonment."

The Iowa court said in Davis v. City of Clinton, 58 Iowa 389, 10 N. W. 768: "Counsel for the appellant insist where the public acquires a highway by prescription or use, the width thereof is sixty-six feet, whether the whole of such width has been used by the public or not. * * * We suppose the claim is made that such a highway must be sixty-six feet wide, because if it had been established in pursuance to the statutes in force * * *, it would have been that width, unless a different width was fixed by the authority directing its establishment. * * * But we do not think it follows that a right obtained by use must necessarily equal in all respects that which might have been obtained under the statute. Besides this, under the statute a highway might be of any width between thirty-three and sixty-six feet. * * * The court cannot, as a matter of law, say that a road

acquired by prescription or use is of any particular width beyond such portion as is actually used by the public."

In Wayne County Savings Bank v. Stockwell, 84 Mich. 586, 48 N. W. 174, 22 Am. S. R. 708, the Michigan court said: "It is not necessary that a highway established by user should be of the statutory width of four rods. A highway by user becomes such to the width and extent used."

Marchand v. Town of Maple Grove, 48 Minn. 271, 51 N. W. 606, referred to section 47, chapter 13, General Statutes of 1878, which prescribed that certain highways, therein mentioned, should be 4 rods wide, and said: "We regard these two sentences of section forty-seven (47) as wholly disconnected, and have no hesitation in holding that the boundary lines of a road secured by user or prescription have not been regulated by statute, but remain as at common law. As the right to the highway in this case depends solely upon an adverse user by the public, its width, and the extent of the servitude imposed upon the plaintiff's land, are measured and determined by the character and extent of the user, for the easement cannot, upon principle or authority, be broader than the user. This is the gist of the decisions upon the subject, where the right to the road is not made referable to or founded upon a claim or color of right furnished by some proceedings instituted for the purpose of laying out and establishing the same."

Whatever may be the width in any particular case, the easement, when acquired by user, cannot be limited to the actual beaten path. It is generally a question of fact to be determined under the circumstances of each case and the easement may be as broad as the public requires for passing as well as traveling in one direction.

It is said in Onstott v. Airdale Ranch & Cattle Co., 129 Neb. 54, 260 N. W. 556: "An easement acquired by prescription is limited in extent to adverse use during the ten-year period."

In Drieth v. Dormer, 148 Neb. 422, 27 N. W. 2d 843, it is said: "A decree, to the extent that it purports to extend the right of a dominant tenant in an easement for a roadway acquired by prescription beyond reasonable use thereof as it was used over the period when the right was being acquired, is invalid and no rights flow therefrom."

Kendall-Smith Co. v. Lancaster County, *supra*, states: "The land used for a county highway is not confined to the wagon track. Teams usually pass wherever they meet, and necessarily depart from the beaten path. When they leave the roadway to pass each other, the public asserts dominion over and uses land outside of the line of travel, and prescriptive rights are not confined to the graded roadway." See, also, Wemmer v. Young, *supra*; Whitesides v. Green, 13 Utah 341, 44 P. 1032, 57 Am. S. R. 740; Campbell v. Covington County, 161 Miss. 374, 137 So. 111; Arndt v. Thomas, 93 Minn. 1, 100 N. W. 378, 106 Am. S. R. 418; Hamp v. Pend Oreille County, 102 Wash. 184, 172 P. 869, L. R. A. 1918E 400.

The judge of the trial court inspected the premises and location of the road on two occasions. The evidence on some material matters is irreconcilably conflicting. The manner in which this court considers and determines an equity case in such a posture has been often stated. Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602; Wemmer v. Young, *supra*; Walla v. Oak Creek Township, 167 Neb. 225, 92 N. W. 2d 542.

The use of the road was for travel over it by ordinary vehicles in the usual manner in which they are generally employed. The circumstances of the case do not justify an easement 40 feet wide across the land of appellants. The record supports an easement across the land of appellants of 20 feet wide, 10 feet on either side of the center line of the road as described in the findings of the district court, as a right-of-way of the road for use by the public as a highway. The findings of the

district court are correct and are adopted by this court except as above modified and stated as to the width of the easement across the land of appellants.

The language in the judgment that "* * * the title to * * * said road is hereby granted to the public" is too broad and it should be and is modified to provide that the public has an easement across the land of appellants as a right-of-way for the road 20 feet wide, 10 feet on either side of the center line of the road as described in the findings, for the use as a public highway, and the judgment as modified should be and it is affirmed.

AFFIRMED AS MODIFIED.