(No. 17005.—Reversed and remanded.)
D. H. MUDGE, Appellant, vs. HENRY WAGONER, Appellee.

*Opinion filed February 18, 1926—Rehearing denied April 8, 1926.*

1. HIGHWAYS—*when a public highway is established by user— burden of proof.* Where a road has been shown to have been openly and notoriously used as an open and public highway in common by the public for a period of fifteen years it will be considered a public highway, the test being not the number of persons actually using the highway but the character of the use,—*i. e.,* whether or not the public generally has had the free and unrestricted right to use the road; and the burden is on the party denying the existence of the highway to show that the use was under some license or indulgence inconsistent with the claim of right by the public.

2. SAME—*what does not constitute change of location of road.* It is not necessary, in order to establish a public highway by user, that all vehicles that traverse it shall follow exactly the same rut, and if the user is over substantially the same strip, changes in the wheel ruts, necessitated by the condition of the road or occasioned by meeting other vehicles, do not constitute a change of location of the road.

3. SAME—*when change in a highway does not affect right of public use.* Where the owner of land over which a road extends changes the route for his own convenience and the public continue the use of the highway as changed, the public right therein does not become extinguished but exists in the highway as changed, and a change in the course of the road after the right of the public is established by user for the statutory period does not defeat the public right to use the road as previously established.

4. SAME—*when payment of rent for use of road does not affect public right.* Payment of rent for the use of a highway, when demanded of a certain party by the owner of the adjoining premises, does not affect the right of the public to use the road, where such right is established by user for the statutory period before such rent was demanded or paid.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

J. F. EECK, for appellant.

WILLIAMSON, BURROUGHS & SIMPSON, and L. G. GEORGE, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed his bill in the circuit court of Madison county seeking to enjoin appellee from interfering with the use of a certain road passing over the land of appellee, on the ground that the road had become a public highway by user. The prayer of the bill is that defendant be enjoined from interfering with the use of the road by complainant or his tenants or agents, or with the reasonable grading, dragging and repairing of the road and placing reasonable drains thereon; also that defendant be restrained from placing or maintaining any posts, gates, fence or other obstruction upon the road or plowing up the same. The bill alleges that the road extends over a strip 16½ feet in width along the westerly line or side of the west half of the southeast quarter of section 10, township 4, north, range 5, west, in Madison county; that the road extends from the southern side of the premises of complainant south to the east and west public highway along the southern border of section 10; that this road continues north along the west side of the premises of complainant to the north side of section 10 and thence east along the northern boundary of that section. On hearing before the court the chancellor found the issues for defendant and dismissed the bill. The cause is brought here for review.

The principal assignment of error is that the finding of the chancellor was against the manifest weight of the evidence. Errors are also assigned on the rulings on the evidence.

It appears that appellant is the owner of the west half of the northeast quarter of section 10 and 25 acres off the north end of the west half of the southeast quarter of said section, making a tract of 105 acres lying on the east side of the center line, north and south, through the section. Appellee owns the southwest quarter of section 10 and the south 55 acres of the west half of the southeast quarter of

the section. The road in question extends north and south through the center of section 10. Appellant's residence is on this road at the southwest corner of his 80-acre tract. The residence of appellee is on the road at the southeast corner of the southwest quarter of the section.

On the hearing before the court appellant offered the testimony of various witnesses. Andrew Clementz testified that he was sixty-six years old and had known the land for fifty years; that he lived on the land now owned by appellant from the year 1887 to 1893; that when he was seven years old he lived on the 160 acres now owned by appellee; that there was then a road running north and south in the place between the 55-acre tract and 160-acre tract of appellee where the road exists now; that he remembered this road from the time he was fifteen or sixteen years of age; that anyone who wanted to go through there did so; that there was no restriction; that general hauling went on up and down that road by anyone who had hauling to do in that direction; that no one ever objected to the use of it and no one asked permission; that he could not tell whether the road followed exactly the same ruts because he did not pay attention, but that it was in practically the same place; that he thought it ran on the west side of the center line of the section; that he had been on the road within the last two years; that the portion of the road extending on north over appellant's farm had been changed slightly.

E. W. Mudge, father of appellant, testified that he was eighty years old; that he had known this road since 1871; that the road was there then and has always been used since that time; that the road has always been on the east side of the north and south line between the 160-acre tract and the 55-acre tract. He was asked by counsel for appellee if he knew of the road extending in a southwesterly direction through an orchard and between the house and barn on appellee's farm, and he stated that he did not; that it had

not been there since 1871; that the road did not vary more than sixteen feet any time since he remembered it.

Herman Wright testified that he had known the road for forty-five years; that in 1886 he moved onto land northwest of that owned by the father of appellant; that when he had occasion to go south across these lands he used this road; that he did not know how long the road had been open.

Joseph Wiegand testified that he had known the road about thirty-three years; that he lived on appellant's land when it was owned by Harry Hall; that witness used this road from 1893 to 1905; that as he remembered it, it was partly on the 160 acres and partly on the 55 acres; that the road is now in the same place as when he lived there and that it was always at the same place during that time; that everyone who wanted to use it did so; that he had seen strangers use the road; that no one had ever suggested to him that Hall or anyone else had any agreement about the road.

John Schouster testified that he was fifty-nine years old and that he had known this road for forty years; that he lived on the place now owned by appellant in the year 1910 and used this road while there; that the road was then the same as it is now.

Otto Trost testified that he had known the road for twenty-seven years; that he knew it in 1901, when he and his parents moved on the Hirsche farm, near by; that anybody used the road that wanted to; that during all the time he had known it, it was in the same place.

William Potthast testified that he is a tenant on appellant's land; that he had lived there for twelve years and had known the road since then; that there had been no change since that time; that he had used the road without interference until two years before the hearing, when appellee built an obstruction across it; that he had repaired

the road in different places by putting brush into the mud-holes so that he could get through.

It appears from the record that a branch or stream runs from the west side of the section in a southeasterly direction across the lower end of appellant's farm and the north-easterly corner of the 55-acre tract of appellee, and that a bridge was built across the stream in this roadway at the south end of the land now owned by appellant and has been maintained there for most of the time during the use of this road. The evidence does not show just when the bridge was built or who built it.

Appellee testified that this road was in use when he bought his farm, in 1891; that at that time the road at the south end went through the yard on the west side of his house in a northeasterly direction for some distance and then followed the line north; that in 1892 he changed the south end of the road because it was more convenient to him to have it on the east side of his house; that ten or twelve years after he went on the farm he had a conversation with Hall, who then owned the 105 acres now owned by appellant, and that he demanded of Hall that he pay rent for the use of the roadway; that Hall was a little stubborn at first and didn't want to pay anything but at last he did pay; that he paid three dollars for a while and later five dollars. Presumably the witness meant per year. He testified that this rent was to cover back to the year 1891, and that just the year before Hall died he paid appellee the sum of $20, which, as appellee testified, was to pay the rent as far as Hall had the land rented out. There is no corroboration whatever of the statement of appellee concerning this matter, and other witnesses who lived in the neighborhood and on the land now owned by appellant testified that they had never heard of such an arrangement or that appellee claimed the right to charge rent for the road. Appellee testified that he had asked rent of appellant but that he refused to pay him. This, however, is denied by appel-

lant, who says that the only conversation he had with appellee with reference to payment of money was on one occasion when appellee complained that appellant's tenant had killed some chickens or pigs, and that appellant told him he ought to have damages if the tenant had killed them. The only other evidence of appellee's claim, aside from his obstructing the highway prior to the bringing of the suit, was shown by a letter from appellant in 1914 which indicated that appellee was making some claim to the road which appellant was resisting.

In support of appellee's testimony he offered that of Henry Kierstein, who testified that he was a tenant on the 55 acres now owned by appellee on the east side of this road from 1878 to 1895, and that the road started north from the east and west highway on the south side of the section, at a point just south of the barn lot, and went northeast between appellee's barn and the house on the west side of the latter; that it extended northeast "about 15 acres" and then went north to appellant's farm pretty close to the line. Appellant, in rebuttal, offered the evidence of Joseph Wiegand, John Schouster and E. W. Mudge, who testified that according to their recollection the road did not extend through the orchard but extended straight south past the east side of the house.

User by the public of a strip of land as a highway over a period of fifteen years constitutes the same a public highway. (Cahill's Stat. 1925, chap. 121, sec. 139; *Village of Middletown* v. *Glenn,* 278 Ill. 149.) The test whether a strip of ground has become a public highway by user is not the number of persons actually using it but the character of that use,—*i. e.,* whether or not the public generally had the free and unrestricted right to use the road. Where a road has been shown to have been openly and notoriously used as an open and public highway in common by the public for the statutory period it will be considered a public highway. (*Lee* v. *Dickman,* 316 Ill. 529; *Phillips* v.

*Leininger,* 280 id. 132.) Where such use is shown, the
burden is on one denying the existence of a public highway
to show that the use was under some license or indulgence
inconsistent with the claim of right by the public. (*Lee* v.
*Dickman, supra; Law* v. *Neola Elevator Co.* 281 Ill. 143;
*Thorworth* v. *Scheels,* 269 id. 573.) The only evidence in
the record indicating that the use of this road was permis-
sive is the testimony of appellee that Hall, who has been
dead since 1911, paid rent therefor. The only evidence that
he ever demanded rent of anyone else is his statement that
he made such demand on appellant. This appellant denies.
There is no other evidence that appellee ever gave permis-
sion or that permission was ever asked of him. The rec-
ord shows that this road was in use by the public generally
having business in that neighborhood from 1871 until 1901,
when, according to appellee's statement, he demanded rent
from Hall. A public highway by user had been established
before such demand was made, if it was made.

Appellee contends that the record in this case does not
show that the same line of travel was followed, and there-
fore does not show sufficient user by the public to justify a
finding that a public highway exists. While the evidence
shows that different persons using the road occasionally
turned out and used other ruts, there is substantial evidence
in the record that the width of the road as used does not
extend over 16½ feet. It is not necessary, in order to
establish a public highway by user, that all vehicles that
traverse it shall follow exactly the same rut. If the user
is over substantially the same strip, changes in the wheel
ruts, necessitated by condition of the road or occasioned
by meeting other vehicles, do not constitute a change of
location of the road. Nor is the fact, if it be a fact, that
appellee in 1891 changed this road so that it extended di-
rectly north and south on the east side of his house rather
than through his orchard sufficient to defeat the right of
the public in the road for two reasons: First, the evidence

shows that the right of the public had become established before such change was made; and second, the change having been made by appellee for his own convenience, he is not now entitled to say that because those who desired to drive over the road followed it as he had changed it, the right of the public in the road as changed became destroyed. Where the owner of land over which a road extends changes the route for his own convenience and the public continue the use of the highway as changed, the public right therein does not become extinguished but the right of the public exists in the highway as changed. *Chenault* v. *Gravitt,* 85 S. W. 184; *Berkey & Gay Co.* v. *Valley City Milling Co.* 194 Mich. 234; *Peck* v. *Lloyd,* 30 Conn. 566; *Hall* v. *Hall,* 106 Me. 389; *Bridwill* v. *Weltner,* 173 Ky. 847; *Boyd* v. *Norris,* 106 S. W. 867; *Almy* v. *Church,* 26 Atl. (R. I.) 58.

We are of the opinion that the right of the public to use this strip of land across the land of appellee as a highway is abundantly shown by the evidence. The burden resting on appellee to show a license or permissive use is not sustained by the testimony in the record. The record establishes that the right of the public in this strip of ground had accrued long before the time when appellee says he collected rent from Hall, and assuming that Hall paid rent for the use of this strip after the right of the public therein had accrued, such fact could not defeat the right of the public in the road. The chancellor erred in dismissing the bill.

The finding of the chancellor is against the manifest weight of the evidence, and the decree will be reversed and the cause remanded, with directions to grant the prayer of the bill.

*Reversed and remanded, with directions.*