912

F. A. Weigel, Jr. et al v. Floyd Cooper, et al

5-4696                                           436 S.W. 2d 85

Opinion Delivered January 13, 1969

*Hodges, Hodges & Hodges* for appellants.

*Lloyd Henry* for appellees.

Carleton Harris, Chief Justice.    The question in this litigation is whether appellees and the public acquired an easement by prescription over a road located upon land belonging to appellant, F. A. Weigel, Jr. Appellees instituted suit in the Woodruff Chancery Court, asserting that the road, known as the Tobe Road, had been used by the general public for a period of time in excess of 30 years, but that appellants, during 1967, constructed a barricade across the road, preventing appellees and the general public from traveling same. The

barricaded road, according to appellant was a "new" road, not in exactly the same location as the older one, dragline work having been performed on the ditches, and a motor grader having been used to clear up the road; an injunction was sought against appellants prohibiting the latter from maintaining the barrier. Appellants denied that the road was a public road, or that it had been used as such, but alleged that if the road had been used by the public for any length of time in excess of 7 years, the use was permissive and not adverse. The court entered a temporary injunction, but on hearing made the injunction permanent, finding:

> "That the roadway known in the record as the 'Tobe' road was established in ancient times and has been used as a means of ingress and egress to and from the settlements along White River and Civilization until the mind of living men run not to the contrary. It seems to the Chancellor that the roadway became a public road by usage long before Plaintiff's acquired title to the lands through which it ran and has never been abandoned by the traveling public. The fact that plaintiffs have acquired the lands, cleared the forest, destroyed the old road and constructed a new one on the same alignment generally would not destroy the right of ingress and egress to plaintiffs which goes back into antiquity."

From the decree entered accordingly, comes this appeal. For reversal, it is urged that the trial court erred in not sustaining appellants' motion challenging the sufficiency of the proof at the conclusion of the evidence offered by appellees; it is further contended that the Tobe Road is not the same as the road presently existing, and it is finally asserted that any use made by appellees was permissive.

As to the first point, there is considerable evidence that the Tobe Road had been in use for a long number

of years. Floyd Cooper, a resident of Augusta, described the road as one that runs along the township line between Sections 35 and 34 on the north side and Sections 2 and 3 on the south side. He stated that he used this road in going to and coming from his farm. This road leads to White River where it runs into another road known as the River Road. Cooper testified that he first started using the road in 1936; that he had hauled his farm products in and out on this roadway, and that there had never been any fence, gate, gap, or other obstruction across it. The witness said that he had never been told to stop using it, and that he had never sought anyone's permission to travel over it. There are other roads in the vicinity, one requiring 7 or 8 miles further travel, and another (Wire Road) requiring about 10 miles more travel, this last road also frequently being under water. The road (to be) was located on unenclosed timberland, and for over 30 years, had wound through the woods. According to Cooper, slight changes in the location occurred from year to year due to mud holes, but the road which Weigel had constructed was pretty well in the same location, *i.e.*, no more than 10 to 20 feet away from the original location.

Ray McSpadden, a landowner in the area, testified that he had used the Tobe Road 95% of the time as the nearest and most direct route to his farm; that he had used it for about 9 years; that it had never been closed at any time until appellants' action about 2 months previous to the litigation. McSpadden said that the road had not changed its course and direction, except that it was now a little south of the previous location. The witness said that he probably made 300 trips a year over this roadway.

W. H. Foster, a landowner in the White River bottoms, testified that the Tobe Road had been used as long as he could remember, and he mentioned several persons, including his grandfather, who had used it. He said that all the families that lived south of the county road

had to use the Tobe Road to get out from the bottoms, because the Wire Road was too low and frequently flooded. This witness testified that there had never been any obstructions on the Tobe Road, and he had never been told previously by anybody not to use it. He said that no one ever sought permission to use it.

Jim Nelson testified that the road had been used as far back as 1918.

Henry Parker had lived in the area until 1940, and he said that the road was open during the entire time that he lived in the vicinity (1921 until 1940); that it had been used to bring out the crops. The witness said that he had not been back to the area until about 2 years before the trial, at which time the land had been cleared; though the present road was a great deal straighter than the original Tobe Road, "generally the road was in about the same area." He said that, back in the '30's, the Tobe Road was "cut back" every year by the people who lived in the area, though the owner of the land never participated in this effort.

Jim Barnett likewise testified that he had frequently used the Tobe Road from about 1933 to about 1935. He said that the location of the improved road is "pretty close to the old one."

Gentry England testified that the road had been used for the last 41 years; that people farming on the river would cut trees or bushes along the edge of this road, and remove all other obstructions which had fallen into the roadway.

At this point appellees rested, and appellants filed a written motion to dismiss the complaint. The court overruled the motion, and this action is assigned as error. It is pointed out that the lands were open, unenclosed, and unimproved, and this being true, the presumption is that the use of the roadway was permissive.

Appellants then assert that permissive use of a road will never ripen into a prescriptive easement, and accordingly (it is argued) it makes no difference how long the road was used. We do not agree that the record reflects that the use of this road commenced by permission of the owner or owners, but even if that were true, we could not agree that this complaint should have been dismissed. In *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W. 2d 281, this court said:

> "A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one point, viz.: Where there is usage of a passageway over land, *whether it began by permission or otherwise,*[1] if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right."

In *Werbe* v. *Holt*, 217 Ark. 198, 229 S.W. 2d 225, we held that the granting of such a motion was proper only if the evidence, when given its strongest probative force, failed to make a *prima facie* case. We then pointed out:

> "* * * Furthermore, in many instances the plaintiff's *prima facie* case must necessarily be somewhat weak, for the reason that only the defendant himself may be able to supply details needed to complete the picture. If the case goes to the trier of the facts on the plaintiff's proof alone, the defendant has the advantage of not exposing weaknesses in his own armor unless called

[1]Emphasis supplied.

to the witness stand by his adversary. For these reasons we have no hesitancy in adopting the majority rule as to the function of a demurrer to the evidence.''

Actually, we consider that appellees plainly made out a *prima facie* case of acquiring a prescriptive right to the road in question. The evidence of the many witnesses is positive to the effect that this roadway was well known, and had been used by many different persons for at least 30 years; in fact, the witnesses (linking their testimony) testified to a definite use of the road from 1918 until it was closed by Weigel a few months before the litigation. There was no evidence that any of these people ever sought permission from anybody to travel over the land. Certainly this usage was open, and the length of time with which it was used without objection is potent evidence to show that the use was as a matter of right, and not as a matter of permission.[2] Here too, there is evidence that many of the people who lived in the area and used the road would perform some type of work to improve the roadway. The court did not err in denying the motion.

After the overruling of the motion, appellants placed several witnesses on the stand. The testimony of some of these actually favored appellees. For instance, Dee Wood, a witness for appellants, was familiar with the road, and testified that it did not have any straight course, because there was too much timber; he

---

[2]In **McGill v. Miller,** 172 Ark. 390, 288 S.W. 932, this court, in litigation involving the use of an alley, said:

"It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use, so as to ripen into title by a limitation."

This case was cited in **Fullenwider.**

had also been over the road after improvements by Weigel. The witness said that the old road was more crooked than the present one, but he couldn't tell too much difference in the exact locations. He said that it was easy to tell that lots of traffic traveled over the old road.

Cleo Peebles also testified as a witness for appellants. He said that he had used the road, and that it was crooked, running down through the woods. The new Weigel road had been moved east about 100 yards at one point, but otherwise, the road had just been straightened. Peebles stated that he had used the road with the owner's permission, and "without it too."

R. J. Haralson testified that he never did get any permission to use the road until he learned that a gate was being placed across it; that he talked with Weigel since he had to have some means of getting out when the Wire Road was not accessible, and was told by the latter that if he (Haralson) would help, they would build a bridge up at the bay, and a road. Haralson testified that he paid $600.00 under this proposition. He was sent a key to the gate.

Doug Weigel, one of the appellees, and a nephew of appellant, Frank Weigel, was called as a witness for the appellants. This witness testified that his father and uncle had owned this land together as tenants in common. At no time during this ownership had the road ever been closed. As to the location of the "new" road with reference to the old one, Weigel stated that both ended at the same place, and had started at the same place until "this year:"

"They changed it here where it starts off the county road, but other than that it would touch from curve to curve all the way through. It would touch, I would say, 95% all the way across to the lake. From the lake to the river it's the same."

According to this appellee, no changes had ever been made in the road until after his father's death and a division of the property.

John Cook, Director of the A.S.C. office in Woodruff County, testified relative to aerial photographs of the area. He said that he could identify Big Jordan and Little Jordan lakes, but in 1962 there was no discernible road between them running east and west. However, he stated that in 1966 (after appellant's work on the roadway) he could locate this road.

Jim Kreis, one of the appellants, is employed by Frank Weigel as manager of the Weigel lands. He testified that the entire length of the Tobe Road was about 1¾ miles, and that a mile of the new construction was in a different location.

Frank Weigel, Jr., testified that the Tobe Road was a typical woods road, winding around the timber and, if bad in a spot, moving over. He said that he decided to straighten out the road which would give him more benefit from the use of it, and accordingly performed dragline work on the ditches, purchasing a tractor with which to grade the road, and hauling in quite a bit of dirt to raise low places. Appellant testified that generally speaking, the road was in a different location from the original one. Weigel said that the use of the road had been by permission; that he did not know of anyone committing any act that would indicate a claim to the road by adverse possession. The work on the "new" road was accomplished in May and June of 1967. Weigel stated that he had not gotten any pipe or gravel from the county to use on the road, though he did admit that he had gotten two pieces of pipe from the County Judge, but stated that these had been placed under the county road. The witness testified that the pipe used for the Tobe Road was his own personal property.

The county judge subsequently testified that either Kreis or Weigel conferred with him about getting pipe, and that pipe had been picked up at two different times. He could not say where the pipe was placed, but he was informed that the pipe would be located under a road used by the public. The witness said that the county had been out some expense on all of the roads mentioned during the litigation, which, of course, included the Tobe Road.

Doug Weigel, called in rebuttal, testified that county employees had, at least on one occasion, graded the road with county equipment.

The authorities heretofore cited in this opinion, relative to appellant's contention that the court should have sustained his demurrer to the evidence, also pretty well answer the other contentions.

As to the argument that the use of the land was permissive, *Fullenwider* v. *Kitchens,* (heretofore cited) makes clear that, even if the use was begun under permission, that fact is immaterial if it continues openly for seven years under such circumstances that the landowner would be presumed to know that this long continued practice was adverse. The long length of time that the road was used by many persons is, in itself, pertinent evidence of adverse use; actually, it appears from the record that this adverse use was established long before Frank Weigel, Jr., had any proprietary interest in the land on which the road is located. This was the finding of the Chancellor, and we think it is supported by a preponderance of the evidence.

Nor is there merit in the contention that this is a different road. Here again, the preponderance of the evidence is to the effect that the greater part of the "new" road is substantially in the same location as the old Tobe Road. This was testified to by Floyd Cooper, Henry Parker, Jim Barnett, Dee Wood, Doug Weigel,

and Cleo Peebles, such testimony having previously been related.

Slight deviations from the accustomed route do not have the effect of destroying a claim to prescriptive right. This is the general rule, and there are cases, so holding, from numerous jurisdictions. In *Carpenter* v. *Schnerle*, 91 Neb. 806, 137 N.W. 850, the court held:

> "Slight deviations from the line of public travel to avoid mud, pools, or natural obstructions will not necessarily prevent the establishment of a highway by prescription * * *."

In *Lindsay Land and Livestock Company* v. *Churnos*, 75 Utah 384, 285 P. 646, that court stated:

> "With respect to the certainty of the line or course of the road, the evidence was also sufficient to support the decree. While the public cannot acquire a right by use to pass over a tract of land generally, but only in a certain line or way, it is not indispensable to the acquisition of the right that there should be no deviation in the use from a direct line of travel. If the travel has remained substantially unchanged, and the practical identity of the road preserved, it is sufficient, although there may have been slight deviations from the common way to avoid encroachments, obstacles, or obstructions upon the road."

The case of *State* v. *Hull* (Neb.) 97 N.W. 2d 535 (1959), cites the Illinois case of *Mudge* v. *Wagoner*, 320 Ill. 357, 151 N.E. 276, in which the facts are very similar to the instant litigation. There, the Supreme Court of Illinois said:

> "Appellee contends that the record in this case does not show that the same line of travel was followed, and therefore does not show sufficient user

by the public to justify a finding that a public highway exists. While the evidence shows that different persons using the road occasionally turned out and used other ruts, there is substantial evidence in the record that the width of the road as used does not extend over 16½ feet. It is not necessary, in order to establish a public highway by user, that all vehicles that traverse it shall follow exactly the same rut. If the user is over substantially the same strip, changes in the wheel ruts, necessitated by condition of the road or occasioned by meeting other vehicles, do not constitute a change of location of the road. Nor is the fact, if it be a fact, that appellee in 1891 changed this road so that it extended directly north and south on the east side of his house rather than through his orchard sufficient to defeat the right of the public in the road for two reasons: First, the evidence shows that the right of the public had become established before such change was made; and second, the change having been made by appellee for his own convenience, he is not now entitled to say that, because those who desired to drive over the road followed it as he had changed it, the right of the public in the road as changed became destroyed. Where the owner of land over which a road extends changes the route for his own convenience, and the public continue the use of the highway as changed, the public right therein does not become extinguished, but the right of the public exists in the highway as changed.''

Affirmed.

Holt, J., not participating.