Eugene F. Connolley *et al.*, Plaintiffs-Appellants, *v.* The City of Leland Grove *et al.*, Defendants-Appellees.

(No. 12096;

Fourth District—October 10, 1973.

Brown, Hay & Stephens, of Springfield, (Robert H. Stephens and Elizabeth G. Frazee, of counsel,) for appellants.

W. J. Simhauser, of Springfield, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiffs sought an injunction against the City of Leland Grove restraining it from widening an existing roadway to the north of their property. Plaintiffs did not question the fact that the City had acquired part of their property by prescription, but denied that they were entitled to the additional amount sought. The City claims that the north 30 feet of plaintiff's property—which would be to the center of Cherry Road—was acquired by the public, and hence by the City, via prescriptive use. Plaintiffs, on the other hand, limit the acquisition by prescriptive use at three to four feet at the west end of their frontage and narrowing down to one foot on the east. The area claimed by the City is 60 feet—30 feet, as we have seen, being the north 30 feet of plaintiffs' property. Plaintiffs appeal from a decree finding that the City had acquired an easement by prescriptive use over the north 30 feet of their property as a public road.

In Illinois, any road which has been used by the public as a highway for 15 years becomes a public highway. This is so by the force of statute —"All roads in this state  *  *  *  which have been established by dedication or used by the public as highways for 15 years  *  *  *  are hereby declared to be public highways". (Ill. Rev. Stat. 1945, ch. 121, par. 152, now substantially the same, Ill. Rev. Stat. 1971, ch. 121, par. 2—202.) The common law rule was 20 years. Did the road here—all 60 feet of it—become a public highway by use or "user", the more appropriate word in this context? For a determination we must of necessity recite the evidence.

Two witnesses testified that for the requisite period of time the roadway in question was 60 feet wide and fenced on either side. Both witnesses described the use of the road for driving cattle and its use by persons for travel. They did not limit this use to a 15 or 16 foot strip and testified that it was used for its entire 60 foot width, particularly when it was muddy, from the fence line on the north to the fence line on the south. There were, as one of these witnesses described it, "no zig-zags" in the fences—that the fences were parallel to each other and 60 feet apart. In addition, these witnesses, just prior to trial, found one of the old fence posts near the northeast corner of plaintiff's property and it was testified that one of them had a hand in building and maintaining the fence in front of plaintiffs' property. By aligning the fence post with various "spots" to the east of plaintiffs' property across a creek which borders on the east, they could position exactly where the original fence had been located. By sighting along this line so established, an engineer was able to determine that no part of the proposed improve-

ment would project south of that line onto plaintiffs' property—in other words, the improvement would be constructed only on land between where the north and south fence lines had once existed. That the road had existed for a very long period of time was evidenced by a deed dated May 8, 1876, which refers to the "north line". This, of course, is no evidence as to the width of the road—merely its existence. Additional testimony was to the effect that the Works Progress Administration, a public agency, had done work on the local road during the depression and as to maintenance by the local road commissioner.

■■ That Cherry Road is a public highway there can be no doubt. Nor can there be much doubt that this public highway was 60 feet in width or that a trier of the fact could so find. As was said in *Mudge v. Wagoner*, 320 Ill. 357, 362, 151 N.E. 276, 279:

> "User by the public of a strip of land as a highway over a period of 15 years constitutes the same a public highway. * * * The test whether a strip of ground has become a public highway by user is not the number of persons actually using it but the character of that use, *i.e.*, whether or not the public generally had the free and unrestricted right to use the road. Where a road has been shown to have been openly and notoriously used as an open and public highway in common by the public for the statutory period, it will be considered a public highway."

Other documentary evidence buttresses the testimony of these witnesses. For instance, a subdivision by plaintiffs' predecessor in title to the land immediately east of their premises in 1925 shows that Cherry Road was 60 feet wide and in an easement granted by this same person to the park district, there was reserved 30 feet—he owned to the center line—for the extension of Cherry Road across a given lot which was immediately east of the plaintiffs' land. Thus, the fence line and the south end of this easement are one and the same. Testimony and exhibits here meet the test set forth in *Township of Madison v. Gallagher*, 159 Ill. 105, 42 N.E. 316:

> "The prescriptive right must be confined to a specific or definite, certain and precise line or way. The location and limits of the way or track may be precisely defined by fences on the sides of it."

And, most analagous to the case before us is *Commissioners of Highways v. Bruner*, 163 Ill.App. 657:

> "Helms erected a fence on the west side of this highway, and Johnson erected a fence on the east line, and the highway so laid out was traveled by the public and generally used by it. By

building these fences the owners of the adjacent property, Helms and Johnson, dedicated the land enclosed between the fences as a public highway.

The use of the land lying between these fences by the public for twenty years or more would create a highway by prescription, even if there had been no dedication by the owners of the land, and the public highway having existed for twenty years or more prior to the time that defendant Bruner became the owner of the land, he had no right or authority to build or construct any fence or make other obstructions therein.

The variation of the travel between these fences is an immaterial matter. The action of the parties in building the fences definitely settled the question of the boundaries of the highway. There is no claim that the highway was ever laid out by the commissioners upon or along this half-section line, or that the owners of the adjoining land ever designated the half-section line as the center of the highway. The right of the public to a highway at this place exists both by dedication and by prescription."

Plantiffs point to the dubious nature of the testimony of the witnesses —to the improbability that use by the public would extend from fence to fence and that the fences were 60 feet apart—particularly, when the surfaced part of the road narrowed down to a one-lane bridge immediately adjacent to the southeast corner of plaintiff's property. Be that as it may, the testimony is that the fence lines persisted, uphill and downdale and across the creek for over 15 years. This testimony is not as a matter of law incredible—so that a trier of the fact, much less a reviewing court, can disregard it. It is not so improbable that it cannot be believed. Furthermore, as the circuit court pointed out, their remembrance of things past was confirmed by latter day exploration—a remnant of the old fence post. This coupled with a plat and a grant of easement evidencing 30 feet on each side of the center line, leads, in our opinion, to only one conclusion—that the public highway here was 60 feet in width.

■■ Plaintiffs suggest that if the public had acquired a prescriptive right it was lost by subsequent non-user. Assuming that this point was raised by the pleadings—it was not passed on by the court below— there was, in our opinion, no evidence of subsequent non-user in the sense that we could say as a matter of law that the right obtained by the public has now been lost or abandoned. Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.